**Victor ALLRED, Respondent,**

v.

**Robin CARNAHAN, et al., Respondents,**

**Missouri Jobs with Justice and Valerie Gordon, Appellants,**

**David Robertson, Amicus Curiae.**

**No. WD 74870.**

Missouri Court of Appeals,
Western District.

April 2, 2012.

Edward D. Greim, for Respondent.

Loretta K. Haggard, for Appellants.

Before Special Division: JOSEPH M. ELLIS, Presiding Judge, KAREN KING MITCHELL, Judge and MARK D. PFEIFFER, Judge.

**PER CURIAM:**

Appellants Missouri Jobs with Justice and Valerie Gordon appeal from a judgment entered by the Circuit Court of Cole County denying their motion to intervene as a matter of right in an action challenging the sufficiency and fairness of the ballot titles and fiscal notes of two ballot initiative petitions concerning Missouri's minimum wage law. For the following reasons, the judgment is affirmed in part and reversed in part.

On November 17, 2011, Respondent Victor Allred, a restaurant owner, brought an action, pursuant to § 116.190,[1] challenging the fairness and sufficiency of the summary statements, the fiscal notes, and the fiscal note summaries of two initiative petitions that seek to change Missouri's minimum wage law ("the Minimum Wage Initiative Petitions").[2] Section 116.190 gives Missouri citizens the statutory right "to challenge the official ballot title[3] or the fiscal note" of initiative petitions certified by the Missouri Secretary of State by bringing an action in the Circuit Court of Cole County. § 116.190.1. As required by statute, Respondent named the Missouri Secretary of State Robin Carnahan and the Missouri State Auditor Thomas Schweich as party defendants. *See* § 116.190.2.

On November 29, 2011, Appellants Missouri Jobs with Justice ("MJJ") and Valerie Gordon sought to intervene as a matter of right in Respondent's action challenging the Minimum Wage Initiative Petitions. In their Motion to Intervene, MJJ alleged that it is a non-profit corpo-

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

2. The case challenging the Minimum Wage Initiative Petitions is *Allred v. Carnahan,* Case No. 11AC–CC00743.

3. An official ballot title consists of a summary statement of the initiative petition and a summary of the initiative's fiscal note. § 116.180. The official ballot title must be attached to the initiative petition as it is circulated for signatures. § 116.010(4).

ration advocating for economic justice. The Motion further asserted that in 2011, MJJ contacted its attorney, Christopher Grant, and authorized him to make arrangements to submit the Minimum Wage Initiative Petitions to the Secretary of State on its behalf. Since the certification of the Minimum Wage Initiative Petitions, MJJ alleged that it has expended its financial resources and time in an effort to circulate the Minimum Wage Initiative Petitions and gather the requisite signatures to ensure the initiatives' placement on the November 2012 ballot. Appellant Gordon alleged that she is a citizen of the State of Missouri, a taxpayer and legal voter, claiming that she was entitled to intervene because she supports and signed the Minimum Wage Initiative Petitions.

Respondent Allred filed suggestions in opposition, to which Appellants filed their reply, and both parties filed affidavits. Thereafter, a brief hearing was held where Appellants' counsel was given an opportunity to present a short argument as to why intervention should be permitted, and subsequently, on February 22, 2012, the circuit court entered a judgment denying Appellants' motion to intervene as of right, or, in the alternative, permissively. In doing so, the court stated that "[f]or purposes of this motion, the Court accepts as true all factual allegations set forth in the affidavits submitted in this matter." The trial court also granted Appellants leave to participate as amicus curiae and file briefing consistent with that status. Appellants timely filed their appeal.

Appellants assert that the trial court erred as a matter of law by denying Appellants' motion for leave to intervene as defendants in Respondent's action challenging the ballot titles and fiscal notes for the minimum Wage Initiative Petitions because Appellants are entitled to intervene as of right pursuant to Rule 52.12(a)(2). Rule 52.12(a) governs intervention as of right. Rule 52.12(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, "[i]n the absence of a statute conferring an unconditional right of intervention," a person seeking to intervene must establish the following three elements: "(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Id.* at 127 (internal quotation omitted). "The proposed intervenor carries the burden of establishing the presence of all three elements required for intervention as a matter of right." *Id.* "When an applicant satisfies the elements, the right to intervene is absolute, and the motion to intervene may not be denied." *McMahon v. Geldersma*, 317 S.W.3d 700, 705–06 (Mo.App. W.D.2010). Alternatively, "a motion to intervene as of right under Rule 52.12(a)(2) may properly be denied if even one of these three elements is not established." *Kinney v. Schneider Nat'l Carriers, Inc.*, 200 S.W.3d 607, 611 (Mo. App. W.D.2006).

A motion to intervene pursuant to Rule 52.12(a) is typically simple motion practice. The procedure is set forth in Rule 52.12(c):

A person desiring to intervene shall serve a motion upon all parties affected thereby. The motion shall state the grounds therefor, and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene.

The applicant files a motion to intervene setting out why it should be permitted to intervene under the Rule and, typically, would attach a proposed pleading and perhaps exhibits in support of the motion. The motion is called up for a hearing, the parties appear and present arguments, and the court makes its decision. There is seldom an evidentiary hearing. Indeed, it has been held that the Rule "should be liberally construed to permit broad intervention" and that even the requirement of a pleading may be excused. *State ex rel. St. Joseph, Mo. Ass'n of Plumbing, Heating and Cooling Contrators, Inc. v. City of St. Joseph*, 579 S.W.2d 804, 806 (Mo.App. W.D.1979).

Current Rule 52.12 was adopted in 1972 and has remained essentially the same since then. In 1978, our Supreme Court first held that an appeal would lie from denial of a motion to intervene of right. In doing so, the Court stated:

But where a statute or the practical necessities grant the applicant an absolute right to intervene, the order denying intervention becomes appealable. Then it may fairly be said that the applicant is adversely affected by the denial, there being no other way in which he can better assert the particular interest which warrants intervention in this instance. And since he cannot appeal from any subsequent order or judgment in the proceeding unless he does intervene, the order denying intervention has

the degree of definitiveness which supports an appeal therefrom.

*State ex rel. Reser v. Martin*, 576 S.W.2d 289, 290–91 (Mo. banc 1978) (quoting *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646 (1947)). From 1978 until 1993, not a single Missouri case addressing appeals from judgments in motions to intervene even mentioned standard of review. In the latter year, this Court decided *McDaniel v. Park Place Care Center, Inc.*, 861 S.W.2d 179 (Mo. App. W.D.1993), which was an appeal from the denial of a motion to intervene. The *McDaniel* Court, without citation to authority, for the first time set forth a standard of review.

The applicable standard of review is found in *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976). The trial court's judgment will be reversed if it erroneously declares or applies the law. The burden is on the intervenor, as pleader, to show all the elements required for intervention as of right.

*Id.* at 180. Since *McDaniel*, numerous cases have repeated that this is the proper standard of review, such that it can now be said with certainty that *Murphy v. Carron* is the standard of review in appeals from denial of a motion to intervene of right. *See, e.g., Estate of Langhorn v. Laws*, 905 S.W.2d 908, 910 (Mo.App. W.D.1995); *State ex rel. Edel v. City of Springfield*, 935 S.W.2d 339, 342 (Mo.App. S.D.1996); *Ballmer v. Ballmer*, 923 S.W.2d 365, 368 (Mo.App. W.D.1996); *Borgard v. Integrated Nat'l Life Ins. Co.*, 954 S.W.2d 532, 535 (Mo.App. E.D.1997).

■ But the application of this standard of review does not transform motions to intervene into substantive trials relative to the merits of intervention. Rather, it is still motion practice, and the applicable procedure is set forth in Rule 52.12(c).

There is no requirement for an evidentiary hearing, nor is there a requirement that either or both parties submit affidavits, depositions or sworn testimony. Typically then, motions to intervene of right are decided on the basis of the motion, the pleadings, argument of counsel, and perhaps suggestions in support or opposition. Consequently, the trial court usually hears no evidence and makes no declarations of law. Rather, the decision is one involving application of the law. *State ex rel. Edel v. City of Springfield*, 935 S.W.2d 339, 342 (Mo.App. S.D.1996) ("[T]he trial court heard no evidence, hence this appeal presents no issue about substantial evidence or weight of the evidence. Furthermore, the trial court made no declarations of law; consequently, the outcome of this appeal hinges on whether the trial court properly applied the law."). But to the extent factual determinations are necessary in deciding whether to grant intervention as of right, "we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the prevailing party and must give due regard to the trial court's credibility determinations." *Williams v. Williams*, 99 S.W.3d 552, 556 (Mo.App. W.D.2003) (internal citation omitted).

With this understanding of our standard of review, we address the merits. Because MJJ's and Gordon's claims for intervention are based on differing circumstances, we will evaluate each Appellant's claim to intervene pursuant to Rule 52.12(a)(2) separately. We address MJJ's claim first.

In this case, there was some minimal evidence consisting of two affidavits, one each from Appellants and Respondent. Lara Granich stated in her affidavit that she is executive director of MJJ, that as executive director, she is responsible for policy planning and administration of the organization, and that she had contacted attorney Chris Grant on behalf of MJJ and asked him to help with the submission of the ballot initiatives at issue to the Missouri Secretary of State. Granich said she told Grant to use his name and address as the person to whom notices are sent. Granich stated that, after the Secretary of State certified the official ballot titles, MJJ and its volunteers began circulating the petition for signatures. She further indicated that MJJ had paid staff members to help in the process of gathering signatures, and that if Respondent Allred's challenge to the summary statements was successful, MJJ would be required to expend additional time and money.

In opposition to Appellants' motion to intervene, Respondent Allred submitted the affidavit of his attorney in the case, Edward D. Greim. Greim stated that he had searched the electronic records of the Missouri Ethics Commission and that he did not discover any reported 2011 expenditures by any political action committees or campaign committees when he conducted a search related to the minimum wage petitions. Greim said that a separate search of expenditures reported by MJJ revealed three "Non–Committee Expenditure Reports" related to the minimum wage petition: (1) $690.69 in "salary and benefits" and "staff time" was reported as expended on November 4, 2011, (2) $49.34 in "salary and benefits" and "staff time" was reported as expended on November 18, 2011, and (3) $18.95 in "staff mileage" and $49.34 in "salary and benefits" and "staff time" was reported as expended on December 2, 2011. Greim further indicated that MJJ was not listed as the campaign committee for the minimum wage petitions. Finally, Greim stated that none of the reports he reviewed referenced any payments made by MJJ to attorney Christopher Grant.

These two affidavits were the only evidence before the trial court. The court stated that it accepted "as true all factual allegations set forth in the affidavits submitted in this matter." We must defer to that assessment of credibility. But as a practical matter, the affidavits add nothing to the assertions made and arguments presented in MJJ's motion and answer, the parties' trial briefs, and arguments of counsel as far as whether MJJ, as the would-be intervenor, has shown "in some fashion ... the factual and theoretical basis for the claim of intervention." *City of St. Joseph,* 579 S.W.2d at 808. The affidavits do not clearly contradict each other, and in fact Greim's affidavit supports many of the assertions contained in Granich's affidavit. The trial court found the contents of both affidavits to be true, and there were no factual determinations based solely on the affidavits that were made or were necessary for disposition of MJJ's motion to intervene of right.

As a preliminary matter, we note that both parties acknowledge that a proponent of an initiative petition generally has a greater interest in the initiative petition than someone, for instance, in Ms. Gordon's posture as a political supporter and signer of the initiative petitions. This is because a proponent or sponsor will likely have been responsible for drafting the initiative petition, causing it to be filed with the Secretary of State, expending time and money in support of it and the like. MJJ contends that it is a proponent of the initiative petitions, while Respondent argues otherwise, and both devote considerable briefing to whether MJJ is, in fact, a proponent.

There is no statutory or regulatory definition of who is a "proponent" of an initiative petition. And cases referring to "proponents" of initiative petitions do so in a generic sense. *See, e.g., Missourian's Against Human Cloning v. Carnahan,* 190 S.W.3d 451 (Mo.App. W.D.2006); *Overfelt v. McCaskill,* 81 S.W.3d 732 (Mo.App. W.D.2002); *Ketcham v. Blunt,* 847 S.W.2d 824 (Mo.App. W.D.1992). Thus, while the parties devote much time to debating whether MJJ is a proponent, the issue is not whether MJJ is a "proponent" of the initiative petition, but rather whether MJJ established its entitlement to intervene as of right pursuant to Rule 52.12(a). As noted earlier, Rule 52.12(a) required MJJ to establish three elements: "(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Am. Tobacco Co.,* 34 S.W.3d at 127. Thus, the parties' arguments regarding whether MJJ is a proponent are actually directed to the first element, that is whether MJJ demonstrated a sufficient "interest relating to the property or transaction that is the subject of the action...." *Rule 52.12(a).*

An interest, for purposes of intervention as of right, "means a concern, more than mere curiosity, or academic or sentimental desire." *In re Liquidation of Prof'l Med. Ins. Co.,* 92 S.W.3d 775, 778 (Mo. banc 2003). "An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment." *Am. Tobacco Co.,* 34 S.W.3d at 128. "To intervene in an action as a matter of right, [the intervenor's] interest in the action must be a direct and immediate claim to, and have its origin in, the demand made or the proceeds sought or prayed by one of the parties to the original action." *In re*

*Clarkson Kehrs Mill Transp. Dev. Dist.,* 308 S.W.3d 748, 753 (Mo.App. E.D.2010) (internal quotation omitted).

■ MJJ claims that it has an interest in the underlying action because it instituted and has promoted the Minimum Wage Initiative Petitions. MJJ began the initiative process by contacting its attorney and requesting his assistance in preparing the Minimum Wage Initiative Petitions. MJJ further authorized that attorney to make arrangements for submitting the two initiatives to the Secretary of State.[4] Since the Secretary of State certified the Minimum Wage Initiative Petitions' official ballot titles, MJJ and its volunteers have been active in the circulation of the petitions for signatures. And MJJ has been paying staff members to help with the signature gathering process. Thus, MJJ has expended its time and financial resources in order to collect the requisite number of signatures to qualify the petitions for the November 2012 ballot. In fact, Greim's affidavit establishes that, as of December 13, 2011, the Missouri Ethics Commission had records of $808.34 having been expended in salary, benefits, staff time, and mileage related to the minimum wage petition.

This is the factual and theoretical basis for MJJ's claimed interest in the underlying action. It establishes that MJJ has more than just a curious, academic or sentimental interest in the underlying action. MJJ was responsible for submitting the Minimum Wage Initiative Petitions, and it has expended its money, time and volunteer efforts in promoting their success. It thus has a quantifiable interest in the underlying action that was not merely consequential, remote or conjectural and, therefore, satisfied the first element for intervention of right.

■ Given that MJJ has an interest in the pending litigation, we now turn to whether that interest will be impaired or impeded by the outcome of the underlying § 116.190 action. The second element of intervention requires a showing that, absent intervention, the proposed intervenor's "ability to protect his interest will be impaired or impeded as a practical matter" by the disposition of the action. *Kinney,* 200 S.W.3d at 611 (internal quotation omitted). As previously discussed, not only did MJJ devote its time and resources in circulating the Minimum Wage Initiative Petitions for signatures, but MJJ was responsible for preparation and submission of the Minimum Wage Initiative Petitions to the Secretary of State. MJJ further asserts that it will continue to circulate petitions and pay staff to help in the signature gathering process. The disposition of the underlying action could frustrate the very efforts taken by MJJ in organizing, supporting, and funding the Minimum Wage Initiative Petitions. Moreover, since May 6th is the deadline for submitting signatures in support of initiative petitions, *Mo. Const. art. III, § 50,* MJJ has a critical interest in seeing to it that the litigation is concluded in a timely fashion. The State defendants acknowledged taking a time neutral view of the litigation. Under these circumstances, MJJ is so situated that the disposition of the underlying action "may as a practical matter impair or impede

---

4. Greim's statement in his affidavit that none of the reports he reviewed referenced any payment made by MJJ to attorney Christopher Grant for his assistance in submitting the petitions to the Secretary of State does not negate or even permit a reasonable inference that MJJ did not seek Grant's assistance in submitting the petitions, particularly in light of the fact that Grant was listed as co-counsel for MJJ on the pleadings and appeared on behalf of MJJ at the hearing on intervention.

[MJJ's] ability to protect [its] interest." *Rule 52.12(a)*.

The final element for intervention as of right requires the proposed intervenor to show that "the existing parties are inadequately representing the applicant's interest." *Am. Tobacco Co.*, 34 S.W.3d at 127 (internal quotation omitted). Although the trial court's judgment is silent as to its basis for denying Appellants intervention as of right, Appellants assert the hearing transcript on the motion suggests the court denied the motion on the basis that the State defendants would adequately represent Appellants' interests in the underlying matter.[5] Whatever the trial court's thinking may have been, Appellants were required to establish all three requirements to be entitled to intervention.

With respect to MJJ and the adequate representation prong, Respondent contends that the trial court properly denied MJJ intervention as of right because MJJ's interests are adequately represented by the State defendants, who, just as MJJ, will be advocating for the current initiative language at trial. *See Ring v. Metropolitan St. Louis Sewer Dist.*, 41 S.W.3d 487, 492 (Mo.App. E.D.2010) ("When two parties are advocating the same position and one is already a party to the underlying suit, leave to intervene is not required" because "[o]ne party is adequate to represent both parties' interests."). MJJ asserts, however, that it demonstrated a divergence of interests such that the State defendants representa-

tion may be inadequate and was, therefore, entitled to intervene of right. MJJ relies on this court's decision in *Underwood v. St. Joseph Bd. of Zoning Adjustment*, 368 S.W.3d 204, 211 (Mo.App.W.D.2012), for the proposition that a government body does not always adequately represent the interests of a person advocating the same position as the proposed intervenor. MJJ argues that the trial court should have instead analyzed whether MJJ had made a minimal showing that the State defendants' representation may be inadequate because of the divergence of interests between MJJ and the State defendants.

 As we intimated in *Underwood*, the fact that two parties are on the same side of the dispute is not enough, in and of itself, to preclude intervention. 368 S.W.3d at 210 (citing *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C.Cir.1969), for the proposition that it is not necessary that the interests of the intervenor and his putative champion already a party be wholly adverse). Rather, "[t]he determination of whether a proposed intervenor's interest is adequately represented by an original party to an action usually turns on whether there is an identity or divergence of interest between the proposed intervenor and the party." *Alsbach v. Bader*, 616 S.W.2d 147, 151 (Mo.App. E.D.1981). "Another factor to be considered is how effective the representation will be in light of a legal disability or the trial strategy of the party which would preclude the party from presenting the claims or defenses of the pro-

5. Appellants' claim that the hearing on their motion to intervene followed immediately on the heels of the hearing in the combined *Prentzler* cases where the court stated that it was denying intervention because those seeking to intervene sought to uphold the ballot title and fiscal summary and, therefore, were adequately represented by the State defendants. *See Prentzler v. Carnahan*, 366 S.W.3d 557, 561 (Mo.App.W.D.2012). Appellants point out that the trial court asked Appellants' counsel if it wanted "any of the language from the title or the fiscal note or the summary changed in any way." Counsel for Appellants responded that they were "seeking to intervene on the side of the defendants and [would] support the current language." Shortly thereafter, the trial court stated it would not allow Appellants leave to intervene as a matter of right.

posed intervenor." *Id.* Furthermore, "where the first two requisites for [intervention as of right] are met, the third element requires only the 'minimal showing' that the representation 'may be' inadequate." *Toombs v. Riley,* 591 S.W.2d 235, 237 (Mo.App. W.D.1979). Thus, once a proposed intervenor establishes an interest in the underlying litigation and that such an interest may be impaired or impeded if intervention is not permitted, the third element is satisfied upon a "minimal showing" that there is a divergence of interest between the proposed intervenor and the party.

■ Here, as we have seen, MJJ has satisfied the first two requisites for intervention as of right. It has an interest in the underlying action that may be impaired or impeded by the disposition of the case. Therefore, MJJ needs only a "minimal showing" that the representation by the State defendants may be inadequate. *See Toombs,* 591 S.W.2d at 237.

MJJ contends that because the State defendants have little incentive to conduct extensive discovery or present expert testimony, no reason to develop legal strategies and arguments beyond those necessary to defend their institutional interests, no reason to expedite the underlying action, and no necessary reason to appeal an adverse decision that it has provided a minimal showing that its interest might not be adequately represented at trial by the State defendants.

As noted *supra,* the State defendants have conceded that they take a time-neutral stance as to ballot title litigation. Yet, as explained earlier, because of the May 6th deadline for signatures, ballot initiatives are necessarily a time-sensitive issue. Thus, MJJ's interest in protecting the effort and expense it has already incurred in supporting the initiatives is best served by a quick resolution of the § 116.190 action.

Thus, as a practical matter, there is a divergence of interests between the State defendants' time neutral view of the proceedings and MJJ's interest in concluding the litigation at the earliest possible date.

Likewise, other aspects of the State defendants' representation reflect potential divergence of their interests from those of MJJ. If denied intervention, MJJ cannot conduct discovery in the underlying action nor can it appeal an adverse decision. In that regard, MJJ asserts, and Respondent does not deny, that the State defendants have conducted no discovery in this case and do not intend do so in preparation for trial, even though challenges to a fiscal note typically involve expert testimony. Thus, the State defendants' trial strategy regarding discovery reflect a significant divergence of interests between MJJ, as one actively pursuing efforts to get the Minimum Wage Initiatives on the ballot, and the State defendants' interest in performing their legally required duties.

MJJ needed only a minimal showing that there was a divergence of interests between it and the State defendants in order to establish that the State's representation may be inadequate. *Toombs,* 591 S.W.2d at 237. They met and exceeded that threshold based on the foregoing.

While certainly not dispositive, we further note that Missouri courts have routinely allowed organizations that submitted initiative petitions and were actively seeking to have them placed on the ballot to intervene in § 116.190 actions. *See Busch v. Carnahan,* 320 S.W.3d 757, 759 (Mo. App. W.D.2010); *Mo. Municipal League v. Carnahan,* 303 S.W.3d 573, 579 (Mo.App. W.D.2010); *State ex rel. Humane Soc'y of Mo. v. Beetem,* 317 S.W.3d 669, 671 (Mo. App. W.D.2010); *Missourian's Against Human Cloning v. Carnahan,* 190 S.W.3d 451, 453 (Mo.App. W.D.2006); *Overfelt v.*

*McCaskill,* 81 S.W.3d 732, 734 (Mo.App. W.D.2002); *Ketcham v. Blunt,* 847 S.W.2d 824, 825 (Mo.App. W.D.1992). The fact that intervention was granted in these cases strongly suggests that individuals, groups and organizations similarly situated to MJJ have typically been found to have an interest in the litigation that, as a practical matter, might be impeded or impaired, and was not adequately represented by the State defendants.

MJJ satisfied the three requisite elements of intervention as of right. Consequently, its right to intervene was absolute and could not be denied. *McMahon,* 317 S.W.3d at 705–06 ("When an applicant satisfies the elements, the right to intervene is absolute, and the motion to intervene may not be denied."). Accordingly, the trial court erred in denying MJJ's motion for leave to intervene as a matter of right.

 Turning to Appellant Gordon's appeal, unlike MJJ, Gordon claims an interest in the underlying action on the sole basis that she is a signatory of the Minimum Wage Initiative Petitions. As this court recently held in *Prentzler v. Carnahan,* 366 S.W.3d 557, 563 (Mo.App.W.D. 2012), the action of signing an initiative petition, in and of itself, does not create a sufficient interest for purposes of intervention as of right in the underlying action. Thus, because Gordon's only interest in the underlying action is as a mere signatory of the Minimum Wage Initiative Petitions, she has failed to establish that she has anything more than a consequential, remote, or conjectural interest in the underlying litigation. Accordingly, the trial court did not err in denying Gordon's motion to intervene as of right in the underlying § 116.190.

In conclusion, the portion of the judgment of the trial court denying MJJ's motion to intervene is reversed and remanded with instructions to grant MJJ intervention. In all other respects, the judgment of the trial court is affirmed.