

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JENNIFER A. BRITT, | ) | |
| | ) | |
| Respondent, | ) | WD81830 |
| | ) | |
| v. | ) | OPINION FILED:  March 26, 2019 |
| | ) | |
| JEREMY M. OTTO, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, S.I., | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jennifer M. Phillips, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

American Family Mutual Insurance Company, S.I. ("American Family") appeals

the trial court's denial of its motion to intervene in an action filed by Jennifer A. Britt

("Britt") in the Jackson County Circuit Court.  The action was filed to confirm an arbitration

award Britt secured against Jeremy M. Otto ("Otto") after Britt was injured in a motor

vehicle accident.  American Family, which insured Otto, argues that it had a right to

intervene in the action to confirm the arbitration award under section 537.065.2.[1] American Family alternatively argues that it had a right to intervene in the action as a matter of right or permissively under Rule 52.12.[2] Because the trial court did not err in denying American Family's motion to intervene, we affirm.

### Factual and Procedural History[3]

On September 9, 2017, Britt was injured in an accident involving her vehicle and a vehicle driven by Otto. Otto was insured by an automobile policy issued by American Family ("Otto's policy"). Otto's policy provided bodily injury liability coverage limited to $100,000 per person. Otto's policy provided that "[American Family] will defend any suit or settle any claim for damages payable under this policy as [it] think[s] proper," but that "[AMERICAN FAMILY] WILL NOT DEFEND ANY SUIT AFTER [ITS] LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF JUDGMENTS OR SETTLEMENTS." Otto's policy also provided that "[American Family] will pay, in addition to [its] limit of liability: . . . expenses incurred by an **insured person** for first aid to others at the time of an auto accident involving [Otto's] **insured car**" ("first aid provision").

On October 4, 2017, Britt extended a time-limited demand to settle to American Family pursuant to section 537.058. Britt's settlement demand provided that "she [would]

---

[1]Unless otherwise indicated, all statutory references are to RSMo 2016 as supplemented through March 6, 2018, the date when Britt and Otto entered into a section 537.065 agreement to limit Britt's recovery to Otto's insurance contract.

[2]All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.

[3]"'In reviewing the trial court's denial of intervention as of right, we consider the facts in the light most favorable to the court's judgment.'" *Wunderlich v. Wunderlich*, 505 S.W.3d 434, 435 n.1 (Mo. App. W.D. 2016) (quoting *Kinney v. Schneider Nat'l Carriers, Inc.*, 200 S.W.3d 607, 610 (Mo. App. W.D. 2006)).

agree to unconditionally release Mr. Otto from all present and future liability under section 537.060 for her personal injury claims against him in exchange for all applicable policy limits and payments." On January 2, 2018, American Family sent a letter purporting to accept Britt's settlement demand "for all policy limits applicable to [its] insured, Jeremy Otto, which are $100,000.00." On January 5, 2018, Britt sent an email disagreeing that "all applicable policy limits" as referred to in her settlement demand was limited to $100,000. Britt asserted that in addition to the $100,000 bodily injury liability limit, she was entitled to receive expenses she incurred for her emergency first aid. On February 5, 2018, American Family sent a letter repeating that Otto's policy had a bodily injury liability limit of $100,000, and that it had accepted Britt's settlement demand by agreeing to pay this policy limit.

On February 28, 2018, American Family filed suit against Britt in the United States District Court for the Western District of Missouri ("federal court action"). American Family sought to enforce the settlement agreement with Britt, and asked the federal court to "[d]irect[] Britt to comply with all material terms of the parties' settlement, including a release of Jeremy Otto and [to] direct[] American Family to pay and Britt to accept payment of $100,000 on the terms described in Britt's October 4, 2017 offer as accepted by American Family." The federal court action did not name Otto as a party, and did not seek a declaratory judgment to resolve whether the first aid clause in Otto's policy afforded Britt additional coverage over and above the bodily injury liability limits.

On March 7, 2018, Otto sent an email to American Family expressing his belief that as a result of the federal court action, American Family was refusing to afford him a defense

3

without a reservation of rights. Otto's email advised American Family that he and Britt

had therefore entered into a section 537.065 agreement.[4] The email stated:

> ***Please consider this notice under section 537.065.2.*** Under th[e] [section
> 537.065] agreement, Mr. Otto has consented to, at the plaintiff's option,
> either a bench trial or an arbitration. I do not know, at this time, what the
> plaintiff will choose. I did talk to the plaintiff's attorney and he is willing to
> let American Family participate in either forum. So, if the plaintiff [chooses]
> arbitration, we want to invite American Family to participate. Please let me
> know if American Family wants to participate and I will work with the
> plaintiff to find a mutually agreeable date to accommodate American
> Family's schedule. We are also willing to consider American Family's
> suggestions for the arbitrator.
>
> In the alternative, if American Family does not want to participate in the
> arbitration or bench trial then I am willing to present any reasonable
> argument or evidence that American Family wants me to make on behalf of
> their insured/my client. I will be happy to argue in either forum that Mr. Otto
> and Ms. Britt have a binding settlement. Although, as I have previously
> stated, I am not confidant that a court or arbitrator will find for Mr. Otto on
> that issue.

(Emphasis added.)

On March 8, 2018, Britt and Otto entered into an agreement to resolve all issues

arising out of the September 9, 2017 motor vehicle accident by binding arbitration pursuant

to the Federal Arbitration Act and Missouri's Uniform Arbitration Act ("arbitration

agreement"). On March 13, 2018, Otto sent American Family a copy of the arbitration

agreement. On March 16, 2018, American Family advised Otto in writing that it believed

the arbitration agreement and the section 537.065 agreement were unauthorized because

American Family had not declined coverage or refused to defend Otto. American Family

also indicated that it would not participate in the arbitration because "if [it] agreed to

---

[4]The record on appeal suggests that the section 537.065 agreement was entered into on March 6, 2018.

4

participate, it would have to dismiss its earlier filed federal action to enforce settlement." American Family took the further position that section 537.065.2 "expressly requires that the insurer have the opportunity to intervene in a <u>lawsuit</u> between the parties," and that Britt and Otto were "apparently seek[ing] to avoid this by operation of the [a]rbitration [a]greement." (Emphasis in original.)

An arbitration hearing was conducted on March 22, 2018. The arbitrator issued an award on April 6, 2018 ("arbitration award"). The arbitration award included findings of fact and conclusions of law regarding Otto's liability for the accident, Britt's claim for damages, and the affirmative defense of settlement and release. The arbitration award concluded that Otto was the sole and only tortfeasor who caused the accident and that no evidence supported a finding of comparative fault. To determine whether Britt's claim was barred by the affirmative defense of release, the arbitrator found it necessary to determine the meaning of the first aid provision in Otto's policy because:

> Britt asked for all the policy limits and payments. If American Family's "first-aid" provision applies, American Family could accept Britt's offer only by agreeing to pay the policy limits of $100,000 and her first-aid expenses. If, however, American Family is correct and the first-aid provision does not apply then American Family could accept Britt's offer by agreeing to pay the policy limits of $100,000.

After considering the language of the first aid provision and applicable case law, the arbitration award concluded that the first aid provision afforded coverage for Britt's emergency medical treatment. As a result, the arbitration award concluded that American Family's response to Britt's settlement demand, which limited payment of all applicable policy limits to the $100,000 bodily injury policy limit, was a counter-offer and not

5

acceptance of Britt's demand. The arbitration award thus rejected the affirmative defense of settlement and release. The arbitration award then found that Britt had been damaged in the amount of $5,998,027, representing $146,549.70 in medical bills (including $35,583.84 for first aid emergency medical treatment); $18,102.99 in personal property damages; $33,375 in lost earnings; $1,800,000 for pain, suffering, and emotional trauma; and $4,000,000 in punitive damages.[5]

After the arbitration award was entered, Britt filed an application to confirm the arbitration award and to enter judgment against Otto accordingly in the Circuit Court of Jackson County, Missouri on April 13, 2018 ("action to confirm the arbitration award"). Otto sent a copy of the arbitration award to American Family by email on April 16, 2018, and demanded that American Family pay the award.

American Family filed a motion to intervene in the action to confirm the arbitration award on April 19, 2018 ("motion to intervene"). American Family also sought a stay of the proceedings pending resolution of the federal court action. In the motion to intervene, American Family alternatively argued: (i) that it was entitled to intervene as a matter of right because section 537.065.2 "confers an unconditional statutory right to intervene upon American Family;" (ii) that it was entitled to intervene as a matter of right under Rule 52.12(a) because American Family had an interest in the subject of the action, its ability to protect that interest was impeded, and neither Britt nor Otto adequately represented its interest; and (iii) that it should be permitted to intervene permissively pursuant to Rule

---

[5]Because the sum of these damages is $5,998,027.69, it appears the arbitrator rounded down in stating the total amount of damages awarded. Punitive damages were awarded because Otto was intoxicated and had driven on the wrong side of a major highway for almost fifteen miles before the accident.

6

52.12(b) because its claims and defenses shared numerous common questions of law and fact with the action to confirm the arbitration award.

Following additional briefing, the trial court entered an order denying American Family's motion to intervene on May 24, 2018. On the same day, Otto filed a response to the application to confirm the arbitration award advising the trial court that "he has no grounds to ask the Court to vacate, modify, or correct the award." The trial court issued a judgment ("Judgment") on May 31, 2018, which confirmed the arbitration award, incorporated the arbitration award by reference, and entered judgment in favor of Britt and against Otto in the amount determined by the arbitration award.

American Family appeals. Britt and Otto ("Respondents") jointly respond.

## Analysis

American Family asserts three points on appeal. Each alleges that the trial court erred in denying its motion to intervene in the action to confirm the arbitration award. The first and second points allege that the trial court erred by refusing to permit American Family to intervene as a matter of right pursuant to Rule 52.12(a)(1) or (2). The third point alleges that the trial court abused its discretion by refusing to allow American Family to intervene permissively pursuant to Rule 52.12(b)(2). Because we review the denial of a motion to intervene as a matter of right pursuant to a different standard of review than that applicable to the denial of a motion to intervene permissively, we address the first two points together and the third point separately.

*Points One and Two: Intervention as a Matter of Right*

American Family's first and second points on appeal allege that the trial court erred in denying its motion to intervene in the action to confirm the arbitration award because American Family was entitled to intervene as a matter of right pursuant to Rule 52.12(a). Rule 52.12(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

American Family's first point on appeal claims a right to intervene in the action to confirm the arbitration award pursuant to Rule 52.12(a)(1) because the unconditional right to do so is conferred by section 537.065.2. American Family's second point on appeal alternatively contends that it had a right to intervene in the action to confirm the arbitration award pursuant to Rule 52.12(a)(2) because American Family has an interest that will be materially prejudiced by the resolution of the proceedings and that is not adequately protected by either Britt or Otto.

We will affirm the trial court's decision denying intervention as a matter of right "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Allen v. Bryers*, 512 S.W.3d 17, 28 (Mo. banc 2016). "'Motions to intervene as a matter of right . . . are typically decided based upon the motion, pleadings, counsel's arguments, and suggestions in support or opposition to the motion.'" *BMO Harris Bank v. Hawes Tr. Invs., LLC*, 492 S.W.3d 607, 615 (Mo.

8

App. W.D. 2016) (quoting *D.S.K. ex rel. J.J.K. v. D.L.T.*, 428 S.W.3d 655, 657 (Mo. App. W.D. 2013)). "'[T]he decision to grant or deny the motion is one involving application of the law.'" *Id.* (quoting *D.L.T.*, 428 S.W.3d at 657).

### *Intervention as a Matter of Right Pursuant to Rule 52.12(a)(1)*

American Family argues that it was entitled to intervene as a matter of right pursuant to Rule 52.12(a)(1) in the action to confirm the arbitration award because section 537.065.2 conferred the unconditional right to do so. We disagree.

Section 537.065.1 allows any person with an unliquidated claims for damages to enter into a contract with a tortfeasor to limit the tortfeasor's liability for a judgment to specified assets, including insurance contracts. *See Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 709 (Mo. banc 2011). The right to enter into a section 537.065.1 contract limiting the tortfeasor's liability to an insurance contract is conditioned on the tortfeasor's insurer being afforded the opportunity to defend the tortfeasor and refusing to do so without reservation.

Section 537.065.2, a new subsection enacted by the General Assembly effective August 28, 2017, describes when a judgment can be entered against a tortfeasor who has entered into a section 537.065.1 contract:

> Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section [referring to section 537.065.1], the insurer or insurers shall be provided with written notice of the execution of the contract and ***shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages***.

9

(Emphasis added.)  It is undisputed that Britt and Otto entered into a section 537.065.1 contract and gave American Family written notice of the execution of the contract before a judgment was entered against Otto.[6]  In fact, in a March 7, 2018 email to American Family, Otto characterized the written notice given to American Family about the section 537.065.1 contract as "notice under section 537.065.2."  The plain and unambiguous language of section 537.065.2 thus afforded American Family the right to intervene as a matter of right in "any pending lawsuit involving the claim for damages" within thirty days after receipt of Otto's written notice of the execution of a section 537.065.1 contract.

American Family claims this statutory right to intervene applied to the action to confirm the arbitration award.  However, the action to confirm the arbitration award was not filed until April 13, 2018, more than thirty days after American Family's receipt of Otto's written notice of the section 537.065.1 contract.  American Family thus did not file a motion to intervene in the action to confirm the arbitration award within thirty days of receipt of written notice of the section 537.065.1 contact.  Even assuming that the action to confirm the arbitration award qualified as a "pending lawsuit involving the claim for damages" (an issue the parties contest but that we need not decide), the plain and unambiguous language of section 537.065.2 did not afford American Family the right to intervene as a matter of right in the action to confirm the arbitration award.

There was a proceeding pending involving the claim for damages within thirty days of American Family's receipt of written notice of the section 537.065.1 contract.  It was the

---

[6]American Family contests that Britt and Otto had the right to enter into a section 537.065.1 contract, as American Family contends it did not refuse to defend Otto without a reservation of rights.  We need not resolve that contested issue.  The validity and/or enforceability of the section 537.065.1 contract is not an issue in this appeal.

10

arbitration proceeding. However, the parties both take the position on appeal (albeit for different reasons) that the phrase "pending lawsuit" in section 537.065.2 does not include arbitration proceedings, relying on the way "lawsuit" has been construed in other contexts. We express no opinion about whether an arbitration proceeding qualifies as a "pending lawsuit" for purposes of section 537.065.2, except to note that in arguing to the contrary, neither party has engaged in the required analysis. "'The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.'" *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018) (*Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). "The plain and ordinary meaning of the words in a statute is determined from the words' usage in the context of the entire statute." *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. banc 2018). Whatever its construction in other contexts, the only context relevant to defining "lawsuit" as used in section 537.065.2 is the intent of the legislature in enacting section 537.065.2, a subject neither party addresses. Here, *even if* the legislature intended arbitration proceedings to fall within the scope of the phrase "any pending lawsuit involving the claim for damages" (an issue we have not been asked to decide),[7] American

---

[7]Although we need not decide whether arbitration proceedings are within the scope of section 537.065.2, the resolution of that question is not as easy as it seems. On the one hand, there is little doubt that the General Assembly intended section 537.065.2 to afford insurers a temporally limited right to intervene as a matter of right in third party tort actions *before* liability and damages have been determined. But that intent alone may not be sufficient to permit the conclusion that the General Assembly intended "pending lawsuit" to include arbitration proceedings. "Intervention" as a procedural practice is not routinely addressed by arbitration rules. And arbitration proceedings are controlled by contract, calling into question whether an insurer who participates in an arbitration proceeding can be bound by the terms of an arbitration contract as to which it is not a party. There is a distinct possibility that the General Assembly simply did not contemplate arbitration proceedings when it enacted section 537.065.2, as it likely did not contemplate that following enactment of section 537.065.2, the parties to a section

11

Family was invited to participate in the arbitration proceeding within thirty days of its receipt of written notice of the section 537.065.1 contract, and elected not to do so.

The trial court did not err in denying American Family's motion to intervene in the action to confirm the arbitration award as a matter of right pursuant to Rule 52.12(a)(1), as section 537.065.2 did not confer upon American Family the unconditional right to do so in this case.[8]

Point one on appeal is denied.

### Intervention as a Matter of Right Pursuant to Rule 52.12(a)(2)

American Family's second point on appeal argues that the trial court erred in denying its motion to intervene because Rule 52.12(a)(2) gave it an absolute right to intervene in the action to confirm the arbitration award. Rule 52.12(a)(2) allows intervention as a matter of right upon timely application if the motion demonstrates: "'(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest.'" *Allen*, 512 S.W.3d at 28 (quoting *Dunivan v. State*, 466 S.W.3d 514, 519 (Mo. banc 2015)). American Family, as the proposed intervenor, bore the burden of establishing each of these requirements. *Dunivan*, 466 S.W.3d at 519. If all three requirements are established, the right to intervene

---

537.065.1 contract would elect to submit their dispute to arbitration in lieu of filing an action in a court of law. We leave the resolution of this question to a future case in which the issue is properly raised as a claim of error on appeal.

[8]American Family also asserts on appeal that, by denying its motion to intervene, the trial court violated its right of access to the courts, as guaranteed by article I, section 14 of the Missouri Constitution. American Family did not present this argument to the trial court. As a result, the issue has been waived, and we cannot address it. *See Weiss v. Rojanasathit*, 975 S.W.2d 113, 121 (Mo. banc 1998) (concluding that because a purported violation of the right of access to the courts was not presented to the trial court, the claim was waived on appeal).

12

is absolute, and a trial court has no discretion to deny the motion to intervene. *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 127 (Mo. banc 2000). But if any one of the requirements is not established, the motion to intervene may be denied. *BMO Harris Bank*, 492 S.W.3d at 618.

The first requirement necessitates an interest in the property or transaction that is the subject of the action. "'An interest, for the purposes of intervention as of right, means a concern, more than mere curiosity, or academic or sentimental desire.'" *Id.* (quoting *Allred v. Carnahan*, 372 S.W.3d 477, 484 (Mo. App. W.D. 2012)). The intervenor's interest "'must be a direct and immediate claim to, and have its origin in, the demand made or the proceeds sought or prayed by one of the parties to the original action.'" *Id.* (quoting *Allred*, 372 S.W.3d at 484). "'An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment.'" *Id.* (quoting *Allred*, 372 S.W.3d at 484).

Missouri courts have long held that "'[t]he liability of an insurer as potential indemnitor of the judgment does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action.'" *Sherman v. Kaplan*, 522 S.W.3d 318, 326 (Mo. App. W.D. 2017) (quoting *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo. App. W.D. 1992)). *Sherman* explained:

> "'That is because the insurer does not either 'gain or lose from the direct operation of that judgment.'" [*Whitehead*, 844 S.W.2d at 479] (quoting *State ex rel. Farmers Mut. Auto Ins. Co. v. Weber*, 273 S.W.2d 318, 321 (Mo. banc

13

1954)). Instead, "the insurer has a forum by declaratory judgment action or in the action to compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of coverage, and hence liability for the judgment." *Id.* at 480. In other words, "[i]n the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder." *Charles v. Consumers Ins.*, 371 S.W.3d 892, 897-98 (Mo. App. W.D. 2012). If either party to the insurance contract breaches in such a way that results in the insurer not providing a defense to the insured during the underlying lawsuit, that matter may be raised only in the proper forum, *i.e.*, a declaratory judgment action or a subsequent garnishment action.

*Id.*

American Family acknowledges the settled principle that an insurer as a potential indemnitor of a judgment does not have a direct interest in an action between the insured and a third party. American Family argues, however, that the settled principle was implicitly overruled in *Allen v. Bryers*. We disagree.

In *Allen*, the insurer filed a declaratory judgment action to determine coverage issues. 512 S.W.3d at 24. Thereafter, the injured party sued the insured's employee, alleging injury as a result of negligence. *Id.* at 25. The insurer sought to intervene in the injured party's lawsuit for the limited purpose of requesting a stay until the declaratory judgment action was resolved. *Id.* The motion to intervene was denied. *Id.* at 26. The trial court subsequently entered judgment in favor of the injured party and awarded $16 million in damages. *Id.* The insurer did not appeal the denial of the intervention motion after the judgment in favor of the injured party became final. *Id.* The injured party later filed a garnishment action against the insurer to collect the judgment. *Id.* The garnishment court entered summary judgment in favor of the injured party and ordered the insurer to

14

pay the $16 million judgment. *Id.* at 27. The insurer appealed, arguing that it was error to overrule the motion to intervene in the underlying tort action because it had an unconditional right to intervene under Rule 52.12(a)(2). *Id.* Our Supreme Court rejected the insurer's argument and concluded that the insurer had the right to appeal the denial of its motion to intervene when the trial court entered a final judgment in the tort action. *Id.* at 28 (citing *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401 (Mo. banc 2016)). Because the insurer did not seek appellate relief from the final judgment in the tort action, the "[i]nsurer abandoned any claim it had regarding the propriety of the [trial] court's ruling on its . . . motion to intervene." *Id.*

American Family argues that by recognizing a right to appeal denial of the motion to intervene, the Supreme Court necessarily implied that the appeal would have had merit, and thus implicitly overruled the settled principle that an insurer's interest in an action between its insured and a third party is not sufficiently direct to satisfy the first requirement for intervention set forth in Rule 52.12(a)(2). This is a strained and unsupportable interpretation of *Allen*. *Allen* did not need to address the merit of the insurer's argument that it was entitled to intervene in the underlying tort action because the insurer waived its right to challenge the denial of its motion to intervene. *Allen* cannot be read to have overruled, *sub silentio*, the settled principle that an insurer's interest in an action between its insured and an injured third party is not sufficient to support intervention as a matter of right pursuant to Rule 52.12(a)(2).

American Family also argues that, even if *Allen* cannot be read as it argues, American Family had an interest in the action between Britt and Otto sufficient to support

15

intervention under Rule 52.12(a)(2) because Otto demanded that American Family pay the arbitration award. American Family cites *Ballmer v. Ballmer*, 923 S.W.2d 365, 368 (Mo. App. W.D. 1996), and *Whitehead v. Lakeside Hospital Ass'n*, 844 S.W.2d 475, 479 (Mo. App. W.D. 1992), for the proposition that an insurer has an interest sufficient to establish the right to intervene when demand is made for indemnity. We disagree.

The cases American Family cites stem from the 1954 decision by our Supreme Court in *State ex rel. Farmers Mutuals Automobile Insurance Co. v. Weber*, 273 S.W.2d 318 (Mo. banc 1954). There, an insurance company sought mandamus, and argued that it was entitled to intervention as a matter of right in a personal injury action because it was interested in the outcome of the suit based on whether it owed its insured a defense. *Id.* at 320. The Court disagreed, and held the insurer's interest "[was] nothing more than, the right to some day in some proper forum and cause litigate its liability upon its above policy." *Id.* at 322. The Court noted that the insurer could protect its interest by either filing a declaratory judgment action to determine coverage, or if the plaintiff prevailed in the personal injury action and thereafter attempted to collect from the insurer, "[the insurer] would be thereafter entitled to its day in court upon the question of its liability to do so." *Id.*

Otto's bare demand that American Family pay the arbitration award was not an action to compel payment of the award. Similarly, the action to confirm the arbitration award was not an action to compel American Family to pay the award. Instead, the action to confirm the arbitration award sought only to reduce the award to a judgment. Until a judgment was entered, neither Otto nor Britt had any means by which they could attempt

16

to compel American Family to pay the award. When an action to compel payment of the award is initiated, however, American Family will have "its day in court upon the question of its liability" to pay the judgment. *Weber*, 273 S.W.2d at 322.

Moreover, had American Family been permitted to intervene in the action to confirm the arbitration award, American Family would not have been able to insist on determination of its liability to pay the award. Pursuant to section 435.400, upon application of a party to an arbitration proceeding, "the court ***shall confirm an award***, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award . . . ." The authorized grounds for vacating an award are limited, and do not include re-litigating the facts or legal issues determined by the award.[9] Section 435.415 provides that "[u]pon the granting of an order confirming, modifying or correcting an award, ***judgment or decree shall be entered in conformity***

---

[9]The Federal Arbitration Act only permits a trial court to vacate an arbitration award:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. section 10 (Westlaw through Pub. L. No. 116-5).
Similarly Missouri's Uniform Arbitration Act only permits a trial court to vacate an arbitration award where:
(1) The award was procured by corruption, fraud or other undue means;
(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
(3) The arbitrators exceeded their powers;
(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted he hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or
(5) There was no arbitration agreement and the issue was not adversely determined in proceedings pursuant to section 435.355 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
Section 435.405.1.

17

***therewith and be enforced as any other judgment or decree***."   (Emphasis added.)

American Family's premise that it could have litigated whether it would ultimately be liable

to pay the arbitration award by intervening in the action to confirm the arbitration award is

erroneous.

The trial court did not err in denying American Family's motion to intervene as a

matter of right pursuant to Rule 52.12(a)(2) because American Family did not establish

that it had the requisite interest relating to the property or transaction which was the subject

of the action to confirm the arbitration award.  *See BMO Harris Bank*, 492 S.W.3d at 618

("'A motion to intervene may be denied if any one of the requirements is not met.'" (quoting

*Maries Cnty. Bank v. Hoertel*, 941 S.W.2d 806, 808 (Mo. App. S.D. 1997))).[10]

Point two on appeal is denied.

### Point Three:  Permissive Intervention Pursuant to Rule 52.12(b)(2)

American Family's third point on appeal argues that it was an abuse of discretion

for the trial court to deny its request to permissively intervene in the action to confirm the

arbitration award pursuant to Rule 52.12(b)(2).  Rule 52.12(b) permits intervention in three

instances: "'(1) when allowed by statute; (2) when an applicant's *claim or defense* and the

main action have a question of law or fact in common; or (3) when the state is seeking

intervention in a case raising constitutional or statutory challenges.'"  *Johnson v. State*, 366

---

[10]We also question whether American Family established the requirement of demonstrating that its ability to protect its interest was impaired or impeded in light of the fact that it was invited to participate in the arbitration proceeding between Britt and Otto and elected not to do so.  Quite independent of whether arbitration proceedings are within the scope of "any pending lawsuit involving the claim for damages" as referred to in section 537.065.2, the fact remains that had American Family agreed to participate in the arbitration proceeding as invited, it would have been a party to the action to confirm the arbitration proceeding.

18

S.W.3d 11, 21 (Mo. banc 2012) (quoting *Comm. for Educ. Equal. v. State*, 294 S.W.3d 477, 487 (Mo. banc 2009)).  American Family argues that its proposed claims and defenses share common questions of law and fact with Britt's application to confirm the arbitration award in that, if allowed to intervene, it would challenge the validity of the arbitration award due to the settlement agreement it entered with Britt.

We review the denial of permissive intervention under Rule 52.12(b) for abuse of discretion.  *Id.*  A trial court abuses its discretion when its decision is "'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'"  *Id.* (quoting *Am. Tobacco Co.*, 34 S.W.3d at 131).

The trial court did not abuse its discretion in denying American Family's motion to permissively intervene in the action to confirm the arbitration award.  As we have already explained, the trial court's authority in that action was strictly limited by statute and would not have extended to permitting American Family to litigate whether it was liable to pay the arbitration award.[11]  Moreover, in denying permissive intervention, the trial court was entitled to consider that American Family declined an invitation to participate in the arbitration proceeding.

Point three on appeal is denied.

---

[11]We express no opinion as to whether American Family is bound by the findings in the arbitration award, including the findings and conclusions involving the affirmative defense of settlement and release, as that issue is not before us.  This opinion should not be read to suggest otherwise.

19

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur