In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 WESTON T. LOVELAND III, ) No. ED108859
 )
 Respondent, )
 )
 vs. )
 ) Appeal from the Circuit Court of
 GABRIEL AUSTIN, ) Cape Girardeau County
 )
 Respondent, )
 ) Honorable Stephen R. Mitchell
 SHELTER MUTUAL INSURANCE )
 COMPANY, )
 )
 Appellant. ) Filed: April 13, 2021

 Shelter Mutual Insurance Company (“Shelter”) appeals the trial court’s judgment

confirming the arbitration award on Weston Loveland’s (“Loveland”) personal injury claim

against Gabriel Austin (“Austin”) in conjunction with the agreement entered into by Loveland

and Austin limiting Austin’s liability pursuant to § 537.065 and denying Shelter’s motion to

intervene in the case.1 Shelter raises nine points on appeal, arguing that the trial court erred in

various ways in denying its motions to intervene and to dismiss and/or deny confirmation of the

arbitration award.

 Finding that the trial court did not err, we affirm the judgment of the trial court.

1
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2019.
 I. Factual and Procedural Background

 On October 31, 2018, Loveland filed his initial petition against Austin asserting a claim

for damages (the “Personal Injury Lawsuit”). In that petition, Loveland alleged that he was

injured by Austin on or about June 11, 2017, when Austin negligently and recklessly stabbed

Loveland in the back with a knife while Austin was under the influence of marijuana and

alcohol. Loveland further alleged that he had significant permanent injuries from the incident and

had incurred significant medical expenses and lost wages, and therefore requested damages. At

the time of the stabbing, Austin’s parents had a homeowner’s insurance policy through Shelter;

on December 18, 2018, Shelter declined to extend coverage to Austin or defend him against

Loveland’s personal injury claims based on the homeowner’s insurance policy’s terms,

conditions, and exclusions, and based on the facts known and available to Shelter. After Shelter

denied coverage, Loveland and Austin agreed to submit the personal injury claim to arbitration

and entered into an agreement limiting Austin’s personal liability pursuant to § 537.065 (the

“.065 Agreement”). On April 25, 2019, the arbitrator entered an award in Loveland’s favor for

the amount of $9,095,206.76 (with a 7.5% post-judgment interest rate) after finding that Austin

was indeed liable for the stabbing (the “Arbitration Award”).

 On June 4, 2019, Austin’s attorney formally notified Shelter that Austin had entered into

the .065 Agreement; Shelter then filed its motion to intervene in the still-pending Personal Injury

Lawsuit on July 3, 2019. On July 15, 2019, Loveland thereafter filed his application to confirm

the Arbitration Award in the Personal Injury Lawsuit, with Austin filing his response to that

application on July 17, 2019. Neither Loveland nor Austin argued grounds for vacating or

modifying the Arbitration Award. On August 5, 2019, the judge granted Shelter’s motion to

intervene, permitting Shelter to file a response to Loveland’s application to confirm the

Arbitration Award. Shelter opposed confirmation of the Arbitration Award. After hearing oral

 2
argument and further briefing on the application to confirm the Arbitration Award, the judge

entered his one-page order denying the application on October 11, 2019, finding that there was

“no existing controversy” such that Loveland and Austin could have properly pursued arbitration

and that “confirmation of [Loveland’s] collusive [A]rbitration [A]ward would be contrary to the

2017 amendments to Section 537.065 and the plain legislative intent shown by such

amendments” (the “October 2019 Order”).2 After being ordered by the court to “proceed with

discovery,” Loveland voluntarily dismissed the Personal Injury Lawsuit without prejudice on

October 29, 2019.

 On November 1, 2019, Loveland filed a new petition seeking confirmation of the

Arbitration Award pursuant to § 435.400 (the “Confirmation Proceeding”). Shelter thereafter

filed its motions to intervene and to dismiss and/or deny Loveland’s petition to confirm the

Arbitration Award on November 19, 2019. After several changes of judge were granted at the

request of the parties, and after additional pleadings on Shelter’s motions to intervene and to

dismiss and/or deny confirmation of the Arbitration Award were filed, the trial court held a

hearing on Shelter’s motions on March 13, 2020.

 On March 24, 2020, the trial court in the Confirmation Proceeding entered its judgment

confirming the Arbitration Award pursuant to § 435.400, and denying Shelter’s motions to

intervene and to dismiss and/or deny confirmation of the Arbitration Award. In its judgment, the

trial court specifically found that the October 2019 Order in the Personal Injury Lawsuit denying

Loveland’s application to confirm the Arbitration Award was “an interlocutory ruling in an

ongoing proceeding and not a final determination of the merits.” The court further found that:

2
 The presiding judge in this proceeding did not state what, if any, evidence supported the finding that the
Arbitration Award was collusive, nor did Shelter cite such evidence in any of its filings. In fact, no evidence was
adduced at the hearing on the motions.

 3
 [T]he language in the October 11, 2019 order, insofar as it references collusion
 and the lack of an existing controversy, is gratuitous and outside the scope of
 [Loveland’s] Application to Confirm Arbitration Award, because this Court is not
 called upon to judge the merits of the Arbitration Award unless asked to do so by
 a party to the arbitration proceeding.

The trial court then stated that “the language in the October 11, 2019 order referencing collusion

and the lack of an existing controversy between the parties was not and is not supported by either

the evidence or the law.”

 The trial court went on to explain that, because Shelter refused to provide a defense for

Austin without a reservation of rights, “Shelter forfeited its right to control the defense of the

claims against … Austin and that Austin was, thereafter, entitled under the law to enter into a

Section 537.065 agreement to arbitrate the claims made against him by … Loveland.” The court

therefore concluded that Shelter could not intervene in the present case pursuant to § 537.065,

reasoning that § 537.065 was inapplicable to a proceeding on whether to confirm an arbitration

award because such a proceeding is not a lawsuit.3 Thus, the trial court found that it was required

to confirm the Arbitration Award pursuant to § 435.4004, and that Shelter could not object to the

confirmation of the Arbitration Award because it was not a party to the arbitration agreement or

the arbitration proceedings. The court therefore granted Loveland’s petition to confirm the

Arbitration Award and entered judgment reflecting the award in Loveland’s favor and against

Austin, as decided by the arbitrator.

 This appeal follows.

3
 While the trial court found that § 537.065 did not apply to the Confirmation Proceeding, it further found that, “to
the extent the notice provision [of § 537.065] is applicable, … such notice was properly given to Shelter….”
4
 Section 435.400 provides: “Upon application of a party, the court shall confirm an award, unless within the time
limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the
court shall proceed as provided in sections 435.405 and 435.410.”

 4
 II. Discussion

 Shelter raises nine points on appeal relating to the trial court’s denials of Shelter’s

motions to intervene and to dismiss and/or deny Loveland’s petition to confirm the Arbitration

Award in the Confirmation Proceeding. We first address those points raising issues pertaining to

Shelter’s right to intervene (Points I, II, III, IV, and V) because they are dispositive of or affect

some of Shelter’s remaining points, and thereafter address Shelter’s points arguing that the trial

court erred in denying Shelter’s motion to dismiss and/or deny Loveland’s petition to confirm the

Arbitration Award (Points VI, VII, VIII, and IX).

 We also note at the outset of our discussion that, while this case presents issues of first

impression for our Court related to the most recent version of § 537.0655 being applied to

procedural facts involving arbitration, the Western District of the Missouri Court of Appeals has

addressed those topics in several similar cases. Specifically, the Western District’s decisions in

Britt v. Otto, 577 S.W.3d 133 (Mo. App. W.D. 2019), Aguilar v. GEICO Cas. Co., 588 S.W.3d

195 (Mo. App. W.D. 2019), and Knight by & through Knight v. Knight, 609 S.W.3d 813 (Mo.

App. W.D. 2020), each address some or all of the issues raised by Shelter in its appeal. While the

Western District’s decisions in those cases are not binding upon our Court, we consider the

holdings in those cases to be instructive to the case at bar.

 Standard of Review for Points I – V

 A trial court’s denial of intervention as a matter of right will be affirmed “unless there is

no substantial evidence to support it, it is against the weight of the evidence, or it erroneously

declares or applies the law.” Breitenfeld v. School Dist. of Clayton, 399 S.W.3d 816, 837 (Mo.

banc 2013) (quoting Johnson v. State, 366 S.W.3d 11, 20 (Mo. banc 2012)); see also Britt, 577

5
 Amendments to § 537.065 became effective on August 28, 2017. Relevant to this case, those amendments included
the addition of the requirement stated in § 537.065.2 of the current version, establishing a requirement to give
insurers notice of an agreement executed pursuant to § 537.065.1 and providing the insurer a limited right to
intervene in any pending lawsuit involving the claim for damages within 30 days of the notice.

 5
S.W.3d at 139. “Motions to intervene as a matter of right … are typically decided based upon the

motion, pleadings, counsel’s arguments, and suggestions in support or opposition to the motion.”

Britt, 577 S.W.3d at 139 (quoting BMO Harris Bank v. Hawes Tr. Invs., LLC, 492 S.W.3d 607,

615 (Mo. App. W.D. 2016)).

 In contrast, we review a trial court’s denial of permissive intervention for abuse of

discretion. Breitenfeld, 399 S.W.3d at 837. “A trial court abuses its discretion when its decision

is ‘clearly against the logic of the circumstances then before the court and is so arbitrary and

unreasonable as to shock the sense of justice and indicate a lack of careful consideration.’” Britt,

577 S.W.3d at 145 (quoting Johnson, 366 S.W.3d at 21).

Points I and II

 In its first point on appeal, Shelter argues that the trial court misapplied Rule 52.12(a)(2)

in denying its motion to intervene as a matter of right because Shelter claimed an interest relating

to the transaction at issue (the Arbitration Award), the proceedings to confirm the Arbitration

Award would have impaired or impeded Shelter’s ability to protect its interest, and Shelter’s

interest was not represented by the existing parties.6 Relatedly, Shelter contends in its second

point on appeal that the trial court misapplied Rule 52.12(a)(1) in that § 537.065.2 allowed

Shelter to intervene as a matter of right.

 Rule 52.12(a) states:

 Intervention of Right. Upon timely application anyone shall be permitted to
 intervene in an action: (1) when a statute of this state confers an unconditional
 right to intervene or (2) when the applicant claims an interest relating to the
 property or transaction that is the subject of the action and the applicant is so
 situated that the disposition of the action may as a practical matter impair or
 impede the applicant’s ability to protect that interest, unless the applicant’s
 interest is adequately represented by existing parties.

6
 All rule references are to Missouri Supreme Court Rules (2019).

 6
 Shelter argues in its first point that Rule 52.12(a)(2) required the trial court to grant its

motion to intervene because it claimed an interest in the transaction at issue (the arbitration

agreement and Arbitration Award) and that Shelter was so situated that the disposition of the

confirmation action might impair or impede Shelter’s ability to protect that interest. Specifically,

Shelter claims that it had an interest arising from the .065 Agreement and from the October 2019

Order initially denying Loveland’s petition for confirmation of the Arbitration Award in the

Personal Injury Lawsuit.

 The Western District addressed and rejected almost this exact argument in both Britt and

Aguilar. As explained in Britt:

 [Rule 52.12(a)(2)] necessitates an interest in the property or transaction that is the
 subject of the action. “An interest, for the purposes of intervention as of right,
 means a concern, more than mere curiosity, or academic or sentimental desire.”
 The intervenor’s interest “must be a direct and immediate claim to, and have its
 origin in, the demand made or the proceeds sought or prayed by one of the parties
 to the original action.” “An interest necessary for intervention as a matter of right
 does not include a mere, consequential, remote or conjectural possibility of being
 affected as a result of the action, but must be a direct claim upon the subject
 matter such that the intervenor will either gain or lose by direct operation of
 judgment.”

577 S.W.3d at 142 (internal quotations and citations omitted) (quoting BMO Harris Bank, 492

S.W.3d at 618). The Western District in Britt further recognized that “Missouri courts have long

held that ‘[t]he liability of an insurer as potential indemnitor of the judgment does not constitute

a direct interest in such a judgment so as to implicate intervention as of right in that action,’”

noting that this is because an insurer does not either “gain or lose from the direct operation of

that judgment.” Id. (quoting Sherman v. Kaplan, 522 S.W.3d 318, 326 (Mo. App. W.D. 2017));

see also Aguilar, 588 S.W.3d at 200; Whitehead v. Lakeside Hosp. Ass’n, 844 S.W.2d 475, 479

(Mo. App. W.D. 1992).

 7
 Finding that the Western District’s rationale in Britt and Aguilar (rejecting insurers’

claims that they had sufficient interests in actions similar to the underlying case at bar such that

they could intervene as a matter of right under Rule 52.12(a)(2)) is persuasive, we further find

that Shelter did not have a direct interest in the Confirmation Proceeding. 7 See Britt, 577 S.W.3d

at 142; Aguilar, 588 S.W.3d at 200.

 We likewise reject Shelter’s claim that it had an interest in the Confirmation Proceeding

deriving from the October 2019 Order initially denying Loveland’s petition in the Personal

7
 We acknowledge that the Western District recognized in Knight that “[b]y enacting new § 537.065.2, the General
Assembly necessarily rejected the judge-made rule that liability insurance carriers lack any direct interest in tort
litigation against their insureds.” 609 S.W.3d at 819. However, to the extent Knight recognizes more than a limited
statutory right of an insurer to intervene in any pending lawsuit involving a claim for damages against its insured
within thirty (30) days after receiving the notice required under § 537.065.2, we reject any such expansion of that
limited statutory right because it not only conflicts with the principle of statutory construction that “courts must give
effect to the statute as written and cannot add provisions which do not appear either explicitly or by implication,” id.
at 823 (quoting Garza v. Valley Crest Landscape Maint., Inc., 224 S.W.3d 61, 64 (Mo. App. E.D. 2007)), but also
conflicts with prior Western District precedent, Britt and Aguilar, each of which were also decided after the August
2017 amendment of § 537.065.2, which provided the new limited statutory right to intervene.

Section 537.065.2 (“a statute of this state”) clearly provides a “right to intervene” such that intervention is allowed
under either Rule 52.12(a)(1) (if “an unconditional right to intervene” exists) or Rule 52.12(b)(1) (if “a conditional
right to intervene” exists). Section 537.065.2 explicitly provides a statutory right to intervene (matching either Rule
52.12(a)(1) or Rule 52.12(b)(1)), but does not explicitly or implicitly establish that insurers have “an interest relating
to the property or transaction that is the subject of” actions involving tort claims where the insurer has denied
coverage and an agreement has been executed pursuant to § 537.065.1. See Rule 52.12(a)(2); see also infra Point I
and II for further explanation of why we do not determine whether the statutory right to intervene granted by
§ 537.065.2 is unconditional or conditional. Thus, we recognize that the new statutory right to intervene under
§ 537.065.2 is limited to its express terms, and will not read any more into the statute than is written.

We therefore disagree with the premise of the specific reasoning in Knight that, by enacting § 537.065.2, “the
General Assembly necessarily rejected the judge-made rule that liability insurance carriers lack any direct interest in
tort litigation against their insureds,” and decline to adopt that rationale or follow it in this case. 609 S.W.3d at 819.

We further note that Knight is factually distinguishable from this case. In Knight, the insurer timely entered into the
personal injury suit and objected to the confirmation of the arbitration award. Id. at 818. The trial court then entered
judgment confirming the award, and the insurer appealed. Id. However, prior to addressing the merits of the case,
the Western District addressed whether the insurer had standing to appeal the confirmation of the award, specifically
addressing whether the insurer was “aggrieved” by the judgment. Id. at 818-19. It was in this regard that the Western
District found that the General Assembly, having amended § 537.065.2 to allow a limited right to intervene,
necessarily rejected the judge-made rule that insurers do not have a direct interest relating to the property or
transaction that is the subject of the action, id. at 819, which is a required finding in order for an insurer to intervene
pursuant to Rule 52.12(a)(2); however, there is no such requirement in § 537.065.2. If the General Assembly had
intended to reject the judge-made rule completely, then it could have expressly so stated in § 537.065.2, and not
limited the insurer’s right to intervene in any pending lawsuit to the 30-day period after notice is received.

 8
Injury Lawsuit.8 To the extent Shelter suggests it would have had the right to litigate whether

Austin’s actions were covered under his parents’ homeowner’s insurance policy issued by

Shelter, “the appropriate forum for that dispute at this point is the pending garnishment action.”

Aguilar, 588 S.W.3d at 201.9

 In its second point on appeal, Shelter alternatively (but relatedly) claims that it should

have been allowed to intervene as a matter of right pursuant to Rule 52.12(a)(1) because

8
 See infra II. Discussion, Point VI for further explanation of the effect of the October 2019 Order. Furthermore, at
oral argument Respondent’s counsel correctly noted that Knight addressed the insurance company’s right to appeal
once it had properly intervened. Thus, Knight is not analogous to this case in that regard.
9
 Shelter also had the ability to protect its interests by filing a declaratory judgment action asking the court to
determine its potential liability under the policy when it became aware of Loveland’s claim against Austin, rather
than just deny liability and refuse to defend Austin. For example, the Western District in Geiler v. Liberty Ins. Corp.,
citing numerous prior cases, recently encouraged insurance companies to take such action, specifically noting as
follows: “Missouri courts have expressly advised that insurers with good faith coverage questions in similar
scenarios should file a declaratory judgment action simultaneous to the underlying personal injury action and seek a
stay of the personal injury lawsuit proceedings until the declaratory judgment action is decided.” 2021 WL 96068, at
*5 n.2 (Mo. App. W.D. Jan. 12, 2021) (quoting U-Haul Co. of Missouri v. Carter, 567 S.W.3d 680 n.4 (Mo. App.
W.D. 2019)). In this regard, Geiler further noted:

 Liberty, believing it had good faith coverage questions, could have moved to stay proceedings in
 the wrongful death lawsuit pending resolution of its coverage dispute in a declaratory judgment
 action, but it failed to do so. Instead, Liberty did not file its declaratory judgment action and
 endeavored to challenge their coverage issues in the equitable garnishment case appealed herein.
 Liberty’s absence from the wrongful death lawsuit was due to its own failure to take the necessary
 actions to determine its coverage issues in a timely manner.

Id.

Likewise, Britt similarly recognized that, “the insurer has a forum by declaratory judgment action or in the action to
compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of
coverage, and hence liability for the judgment.” 577 S.W.3d at 142 (quoting Whitehead v. Lakeside Hosp. Ass’n,
844 S.W.2d 479, 480 (Mo. App. W.D. 1992)). In this regard, Britt continued, “[i]n other words, ‘[i]n the third party
liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the
third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend its
policyholder.’” Id. (quoting Charles v. Consumers Ins., 371 S.W.3d 892, 897-98 (Mo. App. W.D. 2012)) (second
bracketed material in original). Britt further noted, “[i]f either party to the insurance contract breaches in such a way
that results in the insurer not providing a defense to the insured during the underlying lawsuit, that matter may be
raised only in the proper forum, i.e., a declaratory judgment action or a subsequent garnishment action.” Id.
Moreover, Britt further recognized that even if the insurer in that case had been permitted to intervene in the action
to confirm the award, “[it] would not have been able to insist on [a] determination of its liability to pay the award.”
Id. at 144. Rather, pursuant to § 435.400, “upon application of a party to an arbitration proceeding, ‘the court shall
confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or
correcting the award….” Id. (emphasis in original). However, Britt expressly recognized that, “[t]he authorized
grounds for vacating an award are limited, and do not include relitigating the facts or legal issues determined by the
award.” Id. (citing the Federal Arbitration Act, 9 U.S.C. § 10, and the Missouri Uniform Arbitration Act,
§ 435.405.1).

 9
§ 537.065.2 provided it an unconditional right to intervene. While it is clear that § 537.065.2

provides insurers either an unconditional right to intervene under Rule 52.12(a)(1) or a

conditional right to intervene under Rule 52.12(b)(1),10 we find that the right to intervene granted

by § 537.065.2 did not extend to the Confirmation Proceeding filed by Loveland.

 Sub-sections .1 and .2 of § 537.065 relevantly state:

 1. Any person having an unliquidated claim for damages against a tort-feasor, on
 account of personal injuries, bodily injuries, or death, provided that, such tort-
 feasor’s insurer or indemnitor has the opportunity to defend the tort-feasor
 without reservation but refuses to do so, may enter into a contract with such tort-
 feasor or any insurer on his or her behalf or both, whereby, in consideration of the
 payment of a specified amount, the person asserting the claim agrees that in the
 event of a judgment against the tort-feasor, neither such person nor any other
 person, firm, or corporation claiming by or through him or her will levy
 execution, by garnishment or as otherwise provided by law, except against the
 specific assets listed in the contract and except against any insurer which insures
 the legal liability of the tort-feasor for such damage and which insurer is not
 excepted from execution, garnishment or other legal procedure by such contract.
 Execution or garnishment proceedings in aid thereof shall lie only as to assets of
 the tort-feasor specifically mentioned in the contract or the insurer or insurers not
 excluded in such contract. Such contract, when properly acknowledged by the
 parties thereto, may be recorded in the office of the recorder of deeds in any
 county where a judgment may be rendered, or in the county of the residence of the
 tort-feasor, or in both such counties, and if the same is so recorded then such tort-
 feasor’s property, except as to the assets specifically listed in the contract, shall
 not be subject to any judgment lien as the result of any judgment rendered against
 the tort-feasor, arising out of the transaction for which the contract is entered into.

 2. Before a judgment may be entered against any tort-feasor after such tort-feasor
 has entered into a contract under this section, the insurer or insurers shall be
 provided with written notice of the execution of the contract and shall have thirty
 days after receipt of such notice to intervene as a matter of right in any pending
 lawsuit involving the claim for damages.

In sum, § 537.065.1 allows a tort-feasor to contract with a person bringing an unliquidated claim

for damages against said tort-feasor to limit the tort-feasor’s liability for a judgment to specified

assets, including insurance contracts, if an insurer denies coverage and refuses to defend the tort-

10
 Rule 52.12(b)(1) states that “[u]pon timely application anyone may be permitted to intervene in an action: (1)
when a statute of this state confers a conditional right to intervene….”

 10
feasor without reservation. See Britt, 577 S.W.3d at 140. Section 537.065.2 thereafter requires

that written notice of an agreement executed pursuant to § 537.065.1 be given to an insurer

before judgment may be entered against the tort-feasor, and provides the insurer 30 days to

intervene as a matter of right “in any pending lawsuit involving the claim for damages.”

 “The ‘primary rule of statutory interpretation is to give effect to legislative intent as

reflected in the plain language of the statute at issue.’” Nicolazzi v. Bone, 589 S.W.3d 638, 641

(Mo. App. E.D. 2019) (quoting Ivie v. Smith, 439 S.W.3d 189, 202 (Mo. Banc 2014)); see also

Perkins v. Bridgeton Police Dept., 549 S.W.3d 504, 506 (Mo. App. E.D. 2018). “In statutory

construction, courts must give effect to the statute as written and cannot add provisions which do

not appear either explicitly or by implication.” Knight, 609 S.W.3d at 823 (quoting Garza v.

Valley Crest Landscape Maint., Inc., 224 S.W.3d 61, 64 (Mo. App. W.D. 2007)).

 From examining the plain and ordinary language of § 537.065.2, it is clear that the statute

only allows an insurer to intervene as a matter of right “in any pending lawsuit involving the

claim for damages,” provided the insurer files its motion to intervene within 30 days after receipt

of notice of an agreement executed pursuant to § 537.065.1 (emphasis added). Austin provided

the required notice of the .065 Agreement to Shelter on June 4, 2019. The Confirmation

Proceeding (initiated by Loveland’s petition for confirmation of the Arbitration Award), was

filed on November 1, 2019, and thus, was not pending during the timeframe provided by

§ 537.065.2—specifically, 30 days after Austin gave written notice of the .065 Agreement to

Shelter on June 4, 2019. Thus, applying § 537.065.2 as it is written, and without adding

provisions that do not appear explicitly or by implication, see Knight, 609 S.W.3d at 823, the

right to intervene granted under § 537.065.2 cannot extend to the Confirmation Proceeding

because it was not pending in the 30-day period after Shelter received notice of the .065

Agreement. See Aguilar, 588 S.W.3d at 199 (concluding that, while the insurer’s motion to

 11
intervene was timely filed in the initial personal injury action, that personal injury action was

voluntarily dismissed, the parties proceeded to arbitration, and the action to confirm the

arbitration award was filed far outside the 30-day limit provided by § 537.065.2 such that the

motion to intervene in the action to confirm the arbitration award could not have been timely).

As the plain and ordinary language of § 537.065.2 constrained the exercise of the right to

intervene granted under that subsection to “any pending lawsuit” within the 30-day timeline after

an insurer receives notice of an agreement made pursuant to § 537.065.1, whatever right to

intervene that Shelter was granted under § 537.065.2 had expired by the time the Confirmation

Proceeding was commenced.11 Should the General Assembly desire to enlarge the right of an

insurance company to intervene in a lawsuit or other proceeding involving one of its insureds, it

is certainly free to do so.

 As the trial court did not misapply Rule 52.12(a) or § 537.065.2 in denying Shelter’s

motion to intervene in the Confirmation Proceeding, Breitenfeld, 399 S.W.3d at 837; Britt, 577

S.W.3d at 139, 145, Shelter’s Points I and II are denied.

Point III

 In its third point on appeal, Shelter argues that the trial court abused its discretion in

denying Shelter’s motion to permissively intervene. Specifically, Shelter contends that the trial

court abused its discretion by preventing Shelter from permissively intervening because Shelter’s

objections to confirmation of the Arbitration Award presented plain questions of law and fact in

common with Loveland’s petition, such that permissive intervention was permitted under Rule

52.12(b)(2), or, alternatively, because § 537.065.2 provided Shelter a conditional right to

intervene warranting permissive intervention under Rule 52.12(b)(1).

11
 Because we find that Shelter could not have effectively asserted a right to intervene in the Confirmation
Proceeding pursuant to § 537.065.2, we need not address whether the Confirmation Proceeding constituted a
“lawsuit involving the claim for damages” or whether the right to intervene granted by § 537.065.2 is unconditional
or conditional.

 12
 Rule 52.12(b) states:

 Permissive Intervention. Upon timely application anyone may be permitted to
 intervene in an action: (1) when a statute of this state confers a conditional right to
 intervene; or (2) when an applicant’s claim or defense and the main action have a
 question of law or fact in common; or (3) when the validity of a statute, regulation
 or constitutional provision of this state, or an ordinance or regulation of a
 governmental subdivision thereof, affecting the public interest, is drawn in
 question in any action to which the state or governmental subdivision or an
 officer, agency or employee thereof is not a party, the court may in its discretion
 notify the chief legal officer of the state or governmental subdivision thereof, and
 the state or governmental subdivision may in the discretion of the court be
 permitted to intervene, upon proper application.

 We first note that, in conjunction with our denial of Shelter’s second point on appeal,

Shelter’s second argument asserted in its third point (that Shelter had a conditional right to

intervene warranting permissive intervention under Rule 52.12(b)(1)) likewise fails. See supra

II. Discussion, Points I and II. Thus, we only need address Shelter’s argument that its objections

to confirmation of the Arbitration Award (which were attached to its motion to intervene)

presented plain questions of law and fact in common with Loveland’s petition such that Shelter

could permissively intervene under Rule 52.12(b)(2).

 From simply comparing Shelter’s motion to intervene in this case to Loveland’s petition

for confirmation of the Arbitration Award, we find that Shelter’s motion did not present a

question of law or fact in common with the issues presented by Loveland or Austin. Both

Loveland and Austin agreed as to the validity of the arbitration agreement and sought to confirm

the Arbitration Award; in contrast, Shelter, which was not party to the arbitration agreement or

arbitration proceedings because it had denied coverage to Austin and refused to defend him

without reservation, argued in its motion to intervene that the arbitration agreement was invalid,

asserted claims of collusion against Loveland and Austin, and argued issues of law that were not

otherwise present in the Confirmation Proceeding. In sum, Shelter’s motion did not present

questions of law or fact in common with those in the Confirmation Proceeding such that Shelter

 13
could permissively intervene pursuant to Rule 52.12(b)(2). Therefore, the trial court did not

abuse its discretion in denying Shelter’s motion to intervene. Breitenfeld, 399 S.W.3d at 837;

Britt, 577 S.W.3d at 139, 145.

 Shelter’s Point III is denied.

Points IV and V

 In its fourth point on appeal, Shelter argues that the trial court misapplied the law in

denying Shelter’s motion to intervene because the court deprived Shelter of its constitutional

rights to access the courts pursuant to Art. I, § 14 of the Missouri Constitution and the right to

due process of law under the Fifth and Fourteenth Amendments of the United States Constitution

and Art. I, § 10 of the Missouri Constitution. Relatedly, Shelter argues that the trial court

misapplied the law in finding that Shelter lacked standing to object to confirmation of the

Arbitration Award in its fifth point on appeal.

 In sum, Shelter’s fourth and fifth points on appeal are based upon the premise that Shelter

must have the opportunity to defend its interests related to Loveland’s personal injury claim

against Austin. However, Shelter ignores two simple facts. First, Shelter did have the opportunity

to participate and defend its “interest” (to the extent it has an interest in this case) when it had the

chance to defend Austin as the issuer of Austin’s parents’ homeowner’s insurance policy;

instead, Shelter chose to deny coverage to Austin and refused to defend him against Loveland’s

claim without reservation, which allowed Austin to enter into the .065 Agreement with

Loveland. See Adams v. Certain Underwriters at Lloyd’s of London, 589 S.W.3d 15, 37–38 (Mo.

App. E.D. 2019) (“An insurer who refuses to defend a named insured does so at its peril. That

insurer gives up the right to control the litigation, and if it is later found it refused wrongfully, it

will be bound by all those issues and questions necessarily determined in the underlying case. In

such circumstances, the insured is free to enter into an agreement with the claimant under

 14
Section 537.065 in order to limit his liability.”). In addition, Shelter’s argument that it should

have been allowed to intervene because it will be bound by the factual determinations made by

the arbitrator in this case and thus precluded from further arguing whether Austin’s actions

(specifically, whether he negligently and recklessly stabbed Loveland) were covered under his

parents’ homeowner’s insurance policy is unpersuasive when considering the procedural history.

In Loveland’s original petition in the Personal Injury Lawsuit filed on October 31, 2018,

Loveland expressly asserted that he was entitled to damages from Austin because Austin was

“negligent and reckless” when he stabbed Loveland. It is undisputed that Shelter was aware of

this claim and thereafter declined coverage and refused to defend Austin on December 18, 2018.

From the very beginning of the Personal Injury Lawsuit, Loveland’s claim was always that

Austin negligently and recklessly stabbed him; indeed, the arbitrator’s findings of fact are very

much consistent with that claim. Thus, Shelter cannot now claim that it did not know that

Loveland had asserted these facts—as it is clear that Shelter certainly did know—nor can Shelter

now claim that it did not have the opportunity to argue those facts. Shelter refused to defend

Austin, without reservation, against those factual assertions, and did so at its own peril. See id.

 Second, as we have stated previously, “the appropriate forum for [Shelter’s policy]

dispute at this point is the pending garnishment action.” See Aguilar, 588 S.W.3d at 201

(emphasis added). Consistent with our conclusions on Shelter’s second and third points on

appeal, Shelter was not entitled to intervention as a matter of right or permissive intervention in

the Confirmation Proceeding. See supra II. Discussion, Points I, II, and III. As such, the trial

court’s finding that Shelter did not have standing to object to the confirmation of the Arbitration

Award is not erroneous, nor did the trial court violate Shelter’s constitutional rights in denying

its motion to intervene. We find Shelter’s arguments asserted in its fourth and fifth points

unpersuasive. Breitenfeld, 399 S.W.3d at 837; Britt, 577 S.W.3d at 139, 145.

 15
 Shelter’s Points IV and V are denied.

 Standard of Review for Points VI – IX

 As in any court-tried case, we will affirm a trial court’s judgment confirming an

arbitration award unless it is unsupported by substantial evidence, is against the weight of the

evidence, or erroneously declares or applies the law. State ex rel. Greitens v. Am. Tobacco Co.,

509 S.W.3d 726, 735 (Mo. banc 2017); Caldwell v. UniFirst Corp., 2020 WL 6278737, *3 (Mo.

App. E.D. Oct. 27, 2020); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); see also

§ 435.440 (stating that an appeal from an order confirming or denying confirmation of an

arbitration award “shall be taken in the manner and to the same extent as from orders or

judgments in a civil action”).

Point VI

 In its sixth point on appeal, Shelter argues that the trial court erroneously applied the law

in denying Shelter’s motion to dismiss and/or deny confirmation of the Arbitration Award and in

entering judgment confirming the award because Loveland’s petition to confirm the award in the

Confirmation Proceeding was barred by the doctrine of collateral estoppel. Specifically, Shelter

argues that Loveland’s petition in the Confirmation Proceeding and the October 2019 Order

denying Loveland’s original application to confirm the Arbitration Award in the Personal Injury

Lawsuit (entered before Loveland voluntarily dismissed the same without prejudice) met the

requirements of collateral estoppel such that Loveland was barred from re-litigating the issues

raised in the Confirmation Proceeding.

 “The doctrine of collateral estoppel, commonly known as issue preclusion, precludes the

same parties from relitigating issues previously adjudicated between the same parties or those in

privity with them.” Xiaoyan Gu v. Da Hua Hu, 447 S.W.3d 680, 686 (Mo. App. E.D. 2014)

(quoting Robin Farms, Inc. v. Beeler, 991 S.W.2d 182, 185 (Mo. App. W.D. 1999)).

 16
 For collateral estoppel to apply, (1) the issue decided in the first action must be
 identical to the issue in the second; (2) the prior litigation must have resulted in a
 judgment on the merits; (3) the party to be estopped must have been a party or in
 privity with a party to the prior adjudication; and (4) the party to the prior
 adjudication must have had a full and fair opportunity to litigate the issue in the
 prior suit.

Kinsky v. 154 Land Co., LLC, 371 S.W.3d 108, 112 (Mo. App. E.D. 2012); see also Williams v.

S. Union Co., 364 S.W.3d 228, 233 (Mo. App. W.D. 2011). A “final judgment on the merits”

must have been rendered on the issue sought to be precluded in the cause in question for that

issue to be barred under collateral estoppel. Jeffrey v. Cathers, 104 S.W.3d 424, 430 (Mo. App.

E.D. 2003); Spath v. Norris, 281 S.W.3d 346, 351 (Mo. App. W.D. 2009).

 In this case, the October 2019 Order denying Loveland’s original application to confirm

the Arbitration Award in the Personal Injury Lawsuit was not a “final judgment” such that

Loveland’s petition to confirm the award filed in the Confirmation Proceeding was barred by the

doctrine of collateral estoppel. Shelter’s argument that the October 2019 Order was a “final

judgment” because it was immediately appealable under § 435.400 is incorrect. Although

§ 435.400 grants a statutory right to appeal under several circumstances in cases involving

arbitration awards (including from “an order confirming or denying confirmation of an award,”

as in this case), such appeals involve “interlocutory orders,” not “final judgments.” Sanford v.

CenturyTel of Mo., LLC, 490 S.W.3d 717, 718–20 (Mo. banc 2016) (finding that an order

denying arbitration was immediately appealable under § 435.400, but was not a “final

judgment”). “[A]n interlocutory order [(such as one denying a motion to confirm an arbitration

award)] is, by definition, not ‘final’ because Rule 74.01(b) provides that it remains modifiable

and, therefore, ‘[a]t any time before final judgment a court may open, amend, reverse or vacate

an interlocutory order.” Id. at 719–20 (emphasis in original) (third alteration in original) (quoting

Nicholson v. Surrey Vacation Resorts, Inc., 463 S.W.3d 358, 365 (Mo. App. S.D. 2015)).

 17
Although a statute may make an interlocutory order appealable despite its interlocutory nature,

said statute does not make the order a “final judgment” because “[i]t is not a judgment or

dispositive order.” Id. at 718.

 In the case at bar, the October 2019 Order denying Loveland’s original application to

confirm the Arbitration Award did not dispose of the merits of Loveland’s original personal

injury case; rather, it was simply an interlocutory order that very clearly left the merits of the

case completely unresolved. This is even supported by the fact that the judge further instructed

the parties to proceed with the case by beginning the discovery process. Furthermore, as

indicated by the Supreme Court of Missouri in Sanford, the October 2019 Order was subject to

modification until a final judgment was entered in the case. See 490 S.W.3d at 719–20. Thus, the

October 2019 Order denying Loveland’s original application to confirm the Arbitration Award

was not a “final judgment” such that Loveland’s petition to confirm the Arbitration Award filed

in the Confirmation Proceeding was barred by collateral estoppel. See id. at 718–20; Williams,

364 S.W.3d at 233; Jeffrey, 104 S.W.3d at 430.

 Shelter’s reliance on Pinkerton v. Technical Education Services, Inc., 616 S.W.3d 477

(Mo. App. W.D. 2020) is misplaced. In Pinkerton, the Western District held that the prior action

(an arbitrator’s decision finding the arbitration provision in an agreement to be unenforceable),

actually resulted in a judgment on the merits, and the facts determined in the arbitration

proceeding may not be relitigated “where there has been a final and binding arbitration between

the parties.” Id. at 487 (quoting Cooper v. Yellow Freight System, Inc., 589 S.W.2d 643, 645

(Mo. App. E.D. 1979)). In Cooper, this Court stated that, “[i]f the procedure used to settle the

dispute is one of the party’s own choosing, as it was here, and was a final and binding arbitration

between the parties, the courts may not relitigate facts determined in the arbitration proceeding.”

589 S.W.2d at 645. In this case, the facts and issues are not analogous, and Shelter seeks to

 18
relitigate facts that were determined in the arbitration proceeding, after declining the opportunity

to defend its insured. Further, it is clear that the trial court’s ruling on the motion to confirm the

arbitration award in the Personal Injury Lawsuit was an interlocutory order, as discussed above,

rather than a “final judgment” or any type of “judgment” at all. Therefore, Loveland’s voluntary

dismissal under Rule 67.02 served to “wipe[] the slate clean.” Pinkerton, 616 S.W.3d at 481.

While Loveland had the option of appealing the trial court’s refusal to confirm the Arbitration

Award pursuant to § 435.400, he also had the ability to dismiss the Personal Injury Action and

refile a petition seeking to confirm the Arbitration Award pursuant to § 435.400.

 Thus, the trial court did not erroneously apply the law as Shelter contends. State ex rel.

Greitens, 509 S.W.3d at 735; Caldwell, 2020 WL 6278737 at *3; Murphy, 536 S.W.2d at 32;

§ 435.440.

 Shelter’s Point VI is denied.

Points VII

 In its seventh point on appeal, Shelter argues that the trial court misapplied the law in

denying its motion to dismiss and/or deny confirmation of the Arbitration Award and in entering

judgment confirming the award because the award was the result of an invalid and unenforceable

agreement. Specifically, Shelter argues that there was no existing controversy at the time that

Loveland and Austin executed the arbitration agreement.

 Section 435.350 (entitled “Validity of arbitration agreement, exceptions”) states, in

relevant part: “A written agreement to submit any existing controversy to arbitration … is valid,

enforceable and irrevocable, save upon such grounds as exist at law or in equity for the

revocation of any contract.” From examining the Arbitration Award, it is clear that there were

two existing controversies that Loveland and Austin contracted to submit to the arbitrator: (1)

whether Austin was liable to Loveland and, if so, (2) the extent of Austin’s liability to Loveland.

 19
Those controversies clearly existed at the time Loveland and Austin executed the arbitration

agreement. Thus, the trial court did not misapply the law as Shelter contends. State ex rel.

Greitens, 509 S.W.3d at 735; Caldwell, 2020 WL 6278737 at *3; Murphy, 536 S.W.2d at 32;

§ 435.440.

 Shelter’s Point VII is denied.

Points VIII and IX

 In its eighth point on appeal, Shelter argues that the trial court misapplied the law in

denying its motion to dismiss and/or deny confirmation of the Arbitration Award and in entering

judgment confirming the award because doing so deprived Shelter of its constitutional rights to

access the courts pursuant to Art. I, § 14 of the Missouri Constitution and the right to due process

of law under the Fifth and Fourteenth Amendments of the United States Constitution and Art. I,

§ 10 of the Missouri Constitution. Relatedly, Shelter argues in its ninth point on appeal that the

trial court misapplied the law in denying its motion to dismiss and/or deny confirmation of the

Arbitration Award and in entering judgment confirming the award because the court lacked

subject matter jurisdiction over the case under Art. V, § 14 of the Missouri Constitution because

there was no “case or controversy.”

 Shelter’s eighth point on appeal mirrors its fourth point, and simply applies the same

constitutional arguments to the trial court’s denial of its motion to dismiss and/or deny

confirmation of the Arbitration Award in place of the court’s denial of Shelter’s motion to

intervene. Consistent with and for the same reasons as our conclusion on Shelter’s fourth point,

we find that the trial court did not violate Shelter’s constitutional rights by denying its motion to

dismiss and/or deny confirmation of the Arbitration Award. Shelter had and will have other

opportunities to litigate the issues present in this case. See Aguilar, 588 S.W.3d at 201; Adams,

589 S.W.3d at 37–38.

 20
 Regarding Shelter’s argument asserted in its ninth point that there was no “case or

controversy” before the trial court such that it did not have subject matter jurisdiction, § 435.430

(entitled “Court, jurisdiction”) dispels that contention. Section 435.430 states: “The term ‘court’

means any court of competent jurisdiction of this state. The making of an agreement described in

section 435.350 providing for arbitration in this state confers jurisdiction on the court to enforce

the agreement under sections 435.350 to 435.470 and to enter judgment on an award

thereunder.” As Loveland and Austin executed a valid arbitration agreement pursuant to

§ 435.350, and given that Loveland filed his petition to confirm the Arbitration Award granted

by the arbitrator following arbitration pursuant to § 435.400, the trial court clearly had subject

matter jurisdiction pursuant to § 435.430. Thus, Shelter’s argument raised in its ninth point is

implicitly meritless.

 Shelter’s Point IX is denied.

 III. Conclusion

 For the foregoing reasons, the judgment of the trial court is affirmed.

 _______________________________
 Kelly C. Broniec, Judge

Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.

 21