

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| M.O., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD84722 |
| | ) | |
| GEICO GENERAL INSURANCE | ) | Opinion filed: June 7, 2022 |
| COMPANY AND GOVERNMENT | ) | |
| EMPLOYEES INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellants. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE S. MARGENE BURNETT, JUDGE

Division Two: Karen King Mitchell, Presiding Judge,
Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

Government Employees Insurance Company and GEICO General Insurance Company (collectively "GEICO") appeal the judgment of the Circuit Court of Jackson County confirming an arbitration award finding against GEICO's insured—M.B. ("Insured")—and in favor of M.O. Insured and M.O. were in a romantic relationship. After M.O. contracted anogenital human papillomavirus ("HPV"), she submitted a settlement offer to GEICO, asserting Insured negligently infected her with the disease during sexual encounters in his automobile, and that Insured's GEICO-issued automobile insurance policy provided coverage for her injuries and losses. GEICO denied coverage and rejected her settlement offer.

Insured and M.O. entered into an agreement pursuant to section 537.065, RSMo,[1] and agreed to arbitrate M.O.'s claims. The arbitrator found Insured negligently infected M.O. with HPV and awarded her $5.2 million in damages. Thereafter, M.O. filed this action in the trial court. GEICO moved to intervene and M.O. moved to confirm the arbitration award. The trial court granted both motions on the same date and entered judgment in favor of M.O. consistent with the arbitration award. GEICO appeals, asserting the trial court erred in confirming the arbitration award without giving GEICO a meaningful opportunity to defend its interests. For the reasons stated below, we affirm.

**Factual and Procedural Background**

In November of 2017, M.O. and Insured began a romantic relationship. Effective at that time was an automobile insurance policy issued by GEICO to Insured.

On February 25, 2021, M.O. submitted to GEICO a copy of a petition she intended to file against Insured, and made a final settlement offer to resolve her "claims against [Insured] for the applicable limits of $1m."[2] The petition attached to the settlement offer alleged that during "November and early December of 2017," Insured and M.O. engaged in unprotected sexual activities in Insured's vehicle, and during those sexual encounters, Insured "negligently caused or contributed to cause [M.O.] to be infected with HPV by not taking proper precautions and neglecting to inform and/or disclose his diagnosis," despite "having knowledge of his condition."

---

[1] Unless otherwise noted, all statutory references are to RSMo 2016 as supplemented through March 11, 2021, the date M.O. and Insured entered into their section 537.065 agreement. *See Britt v. Otto*, 577 S.W.3d 133, 136 n.1 (Mo. App. W.D. 2019).

[2] It is unclear from the record when M.O. first submitted her claim to GEICO. However, in January 2021, GEICO informed M.O. via letter that it had "completed [its] coverage investigation" and determined "there was no coverage" because the "damages claimed did not arise out of the normal use of the vehicle." GEICO "disclaim[ed] any and all liability or obligation to [M.O.] and to others under" Insured's automobile policy and advised that it would "take no further action with respect to any claim . . . and hereby withdraws from the matter entirely."

2

M.O. alleged that as a result of Insured's negligence, she incurred, and will incur, "past and future medical expenses," as well as "past and future mental and physical pain and suffering." On April 7, 2021, GEICO denied coverage and refused M.O.'s settlement offer. GEICO also initiated a declaratory judgment action in federal court to establish the parties' rights and obligations under the insurance policy.

Meanwhile, on March 11, 2021, M.O. and Insured entered into a Contract to Limit Recovery to Specified Assets and Arbitration Agreement Pursuant to Section 537.065 RSMo ("065 Agreement").[3] On May 17, 2021, M.O. and Insured arbitrated M.O.'s claims, and the arbitrator thereafter issued his "Findings, Conclusions, and Award."

The award first described procedural aspects of the arbitration proceeding, including that: (1) Prior to the arbitration, Insured submitted an Arbitration Statement detailing his defense; (2) Both parties presented opening statements at the arbitration; (3) Insured was given the opportunity to cross-examine M.O.'s witnesses and elicit testimony for Insured's defense; (4) Insured submitted as exhibits three internet articles discussing HPV; (5) M.O. requested an award of $9.9 million in damages in her closing argument; and (6) In his closing argument, Insured disputed that he was aware he could transmit HPV to M.O., M.O. received HPV from him, he had a duty to disclose such diagnosis to M.O., and the amount of damages.

As to his substantive findings, the arbitrator determined that: (1) "there was sexual activity in [Insured's] automobile in November/December of 2017 which occurred in Jackson County, Missouri"; (2) the sexual activity in Insured's vehicle "directly caused, or directly contributed to

---

[3] The 065 Agreement was not made part of the record on appeal, nor was it presented to the trial court. Any reference to the title or the contents of the 065 Agreement we take from filings that were included in the record. Section 537.065, which will be discussed extensively in our analysis, allows an injured party and tortfeasor to enter into an agreement to limit the injured party's recovery to the tortfeasor's applicable insurance limits if the insurer has refused to defend the tortfeasor.

3

cause, M.O. to be infected with HPV"; (3) Insured knew he had "been told that his throat cancer tumor was diagnosed as HPV positive"; (4) Insured should have disclosed his diagnosis to M.O. prior to the sexual activity that occurred, but he did not; and (5) Insured "was negligent and is liable for causing M.O. to contract HPV." The arbitrator found that "an amount that would fairly and justly compensate Plaintiff, M.O., for all of her damages and injuries is $5,200,000," and entered an award in that amount "in favor of Plaintiff M.O. and against the Defendant [Insured]."

On May 24, 2021, M.O. provided written notice to GEICO that she and Insured had entered into an agreement pursuant to section 537.065. The following day, M.O. initiated this action by filing her Petition for Damages in the trial court.[4] On June 10, 2021, GEICO discovered the existence of this lawsuit by monitoring Case.net (Missouri state courts' automated case management system). On June 18th, GEICO filed a motion to intervene.

On June 22nd, M.O. filed a response to GEICO's motion to intervene and a motion to confirm the arbitration award. In her motion to confirm the award, M.O. asserted she and Insured had agreed "that after an arbitration award is issued, [M.O.] will immediately seek to have the award confirmed . . . and reduced to judgment . . . and that neither party will seek judicial review of the award or attempt to have the award set aside, modified, amended or changed in any way unless by express written agreement of each party." On June 29th, GEICO filed a reply in support of its motion to intervene. On July 2nd, the trial court granted M.O.'s motion to confirm the arbitration award and entered judgment in favor of M.O. and against Insured in the amount of $5,200,000. The trial court adopted and incorporated the findings and conclusions of the arbitration award, and stated the award was attached to the judgment as Exhibit A. No exhibit was attached

---

[4] The petition was in all relevant aspects identical to the petition M.O. had attached to her settlement offer to GEICO.

to the judgment. Also on July 2nd, after entering judgment, the trial court entered an order granting GEICO's motion to intervene.

On July 30th, GEICO filed a motion for leave to conduct discovery, a motion for new trial, and a motion to vacate the arbitration award. In the latter two motions, GEICO asserted that the arbitration award and judgment confirming it should be vacated because the award "was procured by collusion, fraud, [and] undue means," it was "contrary to public policy and §§ 537.065 and 435.350," it was the result of an invalid and unenforceable arbitration agreement, and it violated GEICO's due process rights and right to access the courts. The parties submitted additional briefing on GEICO's motions. On September 8, 2021, the trial court summarily denied all of the motions and entered a "Judgment Nunc Pro Tunc," attaching the arbitration award that was inadvertently omitted from the original judgment.

GEICO appeals, asserting three claims of error relating to the trial court's confirmation of the arbitration award—specifically, to the timing of the trial court's confirmation.[5] GEICO asserts that by confirming the arbitration award without giving GEICO a meaningful opportunity to defend its interests and develop facts and arguments pre-judgment, the trial court acted in contravention of section 537.065 and Rule 52.12 (Point I), section 435.405 (Point II), and state and federal constitutional provisions guaranteeing due process and access to the courts (Point III).

**Standard of Review**

"As in any court-tried case, we will affirm a trial court's judgment confirming an arbitration award unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Loveland v. Austin*, 626 S.W.3d 716, 728 (Mo. App. E.D.

---

[5] GEICO has not appealed the trial court's denial of its motions for leave to conduct additional discovery, for a new trial, and to vacate the arbitration award.

2021); *see also* § 435.440.2 (An appeal from an order confirming an arbitration award "shall be taken in the manner and to the same extent as from orders or judgments in a civil action.").

**Point I**

In its first point, GEICO asserts the trial court erred by confirming the arbitration award because section 537.065 and Rule 52.12 "give intervenors the right to meaningfully participate in the case, in that GEICO was prevented from developing facts and arguments pre-judgment." GEICO asserts that, by granting its motion to intervene after entry of judgment, the trial court deprived GEICO of the ability to participate in discovery, submit motions, "or litigate before the Trial Court." However, we find that neither the applicable version of section 537.065 nor Rule 52.12 provides GEICO with any such rights.

"Since its original enactment in 1959, § 537.065 has permitted an injured party and a tort-feasor to agree that, if the injured party obtains a judgment against the tort-feasor, the injured party will seek to collect on the judgment only from 'the specific assets listed in the contract,' and from 'any insurer which insures the legal liability of the tort-feasor.'" *Knight ex rel. Knight v. Knight*, 609 S.W.3d 813, 821 (Mo. App. W.D. 2020) (quoting § 537.065.1). Section 537.065 has been amended twice: once in 2017 and once in 2021. GEICO concedes that the 2021 amendments to the statute—which provide additional rights to insurers—are not applicable here; rather, the version in effect from August 28, 2017 until August 27, 2021 applies. *See also Britt v. Otto*, 577 S.W.3d 133, 136 n.1 (Mo. App. W.D. 2019) (applying the version of section 537.065 that was in effect on the date when the parties entered into their 065 agreement).

The applicable version of section 536.075 provides an insurer with the right to intervene in a pending lawsuit involving its insured:

> Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided

6

with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

§ 537.065.2.[6] However, we have consistently recognized the limited nature of this right of intervention, finding that it does not provide for the "unconditional right to litigate the injured party's claims on the merits," but "merely requires that insurers be provided with notice of an agreement entered under § 537.065 '[b]efore a judgment may be entered,' and that insurers have the opportunity to intervene in 'any pending lawsuit' for thirty days thereafter." *Knight*, 609 S.W.3d at 820-21, 827 (rejecting the insurer's argument that section 537.065.2 "necessarily gave insurers the right to contest the insured's liability, and the claimant's damages, on the merits, whatever the status of the litigation at the time of the intervenor's intervention" (emphasis omitted)); *see also Aguilar v. GEICO Cas. Co.*, 588 S.W.3d 195, 198-99 (Mo. App. W.D. 2019); *Britt*, 577 S.W.3d at 140-41.

Thus, contrary to its claim, GEICO was not entitled to "develop facts and arguments pre-judgment." Rather, section 536.075.2 "simply give[s] an insurer the right to written notice and an opportunity to intervene," and provides no "other rights beyond what any intervenor would have." *Knight*, 609 S.W.3d at 823. "[I]t is well established that an intervenor must accept the action pending *as he finds it at the time of intervention*." *Id.* at 824 (emphasis in original) (internal marks omitted). At the time of GEICO's intervention, liability and damages had been determined by an arbitrator and confirmed by the trial court. GEICO had no right to relitigate those issues. *See id.* at 827 ("State Farm was required to take the action as it found it at the time of its intervention," and "[a]t that time, it was not open to State Farm to seek to relitigate the Knights' liability to Collin,

---

[6] This requirement that insurers be given written notice and an opportunity to intervene was one of two additions to section 537.065 in 2017. The other was that parties could not enter into an 065 agreement unless the insurer had been given "the opportunity to defend the tort-feasor without reservation but refuse[d] to do so." § 537.065.1.

or the amount of his recoverable damages." (internal marks omitted)); *cf. Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 174 (Mo. App. W.D. 2021) (where the amount of damages "was still an unresolved factual issue" at the time of the insurer's intervention, insurer "should not have been restricted by the trial court in conducting discovery on that issue"). Nor did GEICO possess a right to intervene prior to entry of judgment. *See Aguilar*, 588 S.W.3d at 198 ("The plain and unambiguous meaning of the statute requires that a tortfeasor and injured party *give notice* to the insurer of a section 537.065 contract before a judgment may be entered, not that the insurer must be allowed to intervene before judgment may be entered." (emphasis in original)).[7]

Finally, GEICO argues that "[i]ntervention under [Rule] 52.12,[8] like intervention under § 537.065.2, provides substantive rights to intervenors," including the right to raise legitimate defenses and to assert their rights against the claims alleged in the suit. We do not deny that an intervenor—whether intervention is permitted under section 537.065 or Rule 52.12—enjoys the same rights as any other party to the lawsuit. *See Rasmussen*, 628 S.W.3d at 173-74 ("After being allowed to intervene, the insurer becomes a 'party' to the lawsuit with the same rights of any other party." (internal marks omitted)). However, we return to the maxim that "an intervenor must accept

---

[7] GEICO argues that it had a statutory right to intervene in a "***pending*** lawsuit" (emphasis GEICO's), relying on language in *Desai v. Seneca Specialty Insurance Co.* describing the 2017 amendment of section 537.065 as "add[ing] the requirement that insurers be given written notice and the opportunity to intervene prior to judgment." 581 S.W.3d 596, 600 (Mo. banc 2019). As an initial matter, we note that the court in *Desai* described an "opportunity" to intervene prior to judgment, not a "right" to pre-judgment intervention. *See id.* at 600-01. But more importantly, the court in *Desai* was not called upon to determine whether section 537.065.2 provided an insurer with the right to pre-judgment intervention; rather, the issue in *Desai* was whether the original version of section 537.065 or the 2017 version of the statute applied, requiring the court to determine whether the 2017 version was a continuation of the original version. *See id.* at 598-602. Thus, we reject GEICO's argument that, pursuant to *Desai*, it had a right to intervene in a "pending" lawsuit. *See Aguilar*, 588 S.W.3d at 198 n.7 (rejecting the same argument, and noting that "[t]he court in *Desai* was not called on to answer the question raised here," *i.e.*, whether GEICO had a statutory right to intervene pre-judgment); *see also Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo. App. W.D. 2003) (statements are non-binding dicta if they are not essential to the court's decision).

[8] Rule 52.12 sets forth the criteria for intervention, both permissive and as a matter of right. In its motion to intervene, GEICO sought intervention as a matter of right pursuant to section 537.065.2 and Rule 52.12(a)(1) and (a)(2), and permissive intervention pursuant to Rule 52.12(b)(2). The trial court granted GEICO's motion, finding GEICO had "a statutory, absolute, and non-discretionary right to intervene in this matter following the [parties'] execution of an agreement pursuant to RSMo. § 537.065."

the action pending as he finds it at the time of intervention." *See Knight*, 609 S.W.3d at 824 (emphasis omitted) (quoting *Martin v. Busch*, 360 S.W.3d 854, 858 n.5 (Mo. App. E.D. 2011) (a case involving intervention as a matter of right pursuant to Rule 52.12(a))); *see also Rasmussen*, 628 S.W.3d at 174. As discussed above, when GEICO intervened, liability and damages had already been determined and judgment had been entered. Rule 52.12 did not bestow upon GEICO the right to relitigate those issues, nor did it provide GEICO with a right to intervene prior to judgment. *See Aguilar*, 588 S.W.3d at 197-98 (rejecting the insurer's argument that it must be allowed to intervene before judgment may be entered, and finding the trial court did not err in denying the insurer's motion to intervene—which was based on Rule 52.12 and section 537.065— the same day it entered judgment affirming the award).

Point I is denied.

## Point II

In its second point, GEICO asserts "[t]he Trial Court erred by confirming the arbitration award, because RSMo. § 435.405 provides a right to challenge arbitration awards, in that GEICO was prevented from raising and developing its reasonable, good-faith arguments about the arbitration award's invalidity due to fraud, collusion, undue means, and unreasonableness." Once again, GEICO's argument rests on the timing of the trial court's judgment: GEICO asserts it had a right to challenge the award prior to entry of judgment.[9] We disagree.

GEICO relies on section 435.405 as the source of its right to challenge the arbitration award pre-judgment. Sections 435.400 and 435.405 govern the confirmation and vacatur of arbitration awards. Section 435.400 provides that, "Upon application of a party, the court shall confirm an

---

[9] Indeed, GEICO filed post-judgment motions to vacate the arbitration award and for a new trial, in which GEICO argued at length that the award was invalid due to fraud, collusion, undue means, and unreasonableness. The motions were overruled.

9

award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in section[] 435.405 . . . ." Section 435.405 provides that, "Upon application of *a party*, the court shall vacate an award where . . . [t]he award was procured by corruption, fraud or other undue means," and that "[a]n application pursuant to this section shall be made within ninety days after delivery of a copy of the award to the applicant[.]" § 435.405.1(1) (emphasis added), .2. The combined effect of these statutes is that "[u]pon application of a party to confirm the arbitration award as judgment, the court must confirm the award, unless the opposing party moves to vacate or modify the award." *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 310 (Mo. App. W.D 2006).

GEICO argues that the trial court "ignored" that section 435.405 "gives parties ninety days from receiving a copy of the award to apply for vacation of the award," and that the trial court "deprived GEICO of its statutorily-guaranteed time period in which to challenge the award." But GEICO was not a "party" when M.O. applied for confirmation of the award, nor was it a "party" at any time prior to the trial court's entry of judgment confirming the award. The proposition underlying GEICO's argument then must be that either (1) the ninety-day right to challenge awards provided by section 435.405 extends—contrary to the plain language of the statute—to non-parties, such as proposed intervenors or (2) the trial court was required to allow GEICO to intervene prior to entering judgment confirming the award. As to the former, GEICO provides no support for an interpretation of section 435.405 that guarantees a non-party ninety days to challenge an arbitration award prior to entry of judgment, and we are not persuaded by such an interpretation of the statute. As to the latter, as we have stated above, GEICO enjoyed no right to intervene prior to entry of judgment, *see Aguilar*, 588 S.W.3d at 198, and was required to accept the action as it found it at the time of intervention, *see Knight*, 609 S.W.3d at 824.

When M.O. filed her application to confirm the arbitration award, she and Insured were the sole parties to the lawsuit. M.O. indicated in her application that she and Insured had agreed that M.O. would "immediately" seek confirmation, and neither party would seek judicial review of the award or attempt to have it vacated or set aside. Thus, when the trial court confirmed the arbitration award, all parties to the lawsuit (and to the arbitration) were in favor of immediate confirmation, and no party had raised grounds for vacating, modifying, or correcting the award. GEICO enjoyed no rights under section 435.405 until it became a party to the action, and the trial court was not required to allow GEICO to intervene prior to entering judgment confirming the award. We cannot say the trial court erred by confirming the arbitration award under these circumstances.[10]

Point II is denied.

**Point III**

In its third point, GEICO asserts the trial court erred by confirming the arbitration award "because the state and federal constitutions provide a party with rights to defend its interests, in that GEICO was denied the right to litigate its interests before judgment was entered against its insured." Specifically, GEICO asserts that "[c]onfirming M.O.'s Application violated GEICO's due process rights under Article I, Section 10 of the Missouri Constitution and the Due Process Clause of Amendments V and XIV to the United States Constitution," and that the trial court's

---

[10] GEICO provides scarce argument on the issue of trial court error, and instead devotes the majority of its briefing on this point to its claim of prejudice, attempting to demonstrate "its reasonable, good-faith arguments about the arbitration award's invalidity" and the prejudice resulting from GEICO's inability "to establish its claims through discovery." Nonetheless, GEICO does appear to argue that the trial court should not have confirmed the arbitration award while GEICO's motion to intervene was pending because "it was obvious, especially given GEICO's references to M.O. and [Insured's] § 537.065 agreement, that GEICO intended to challenge any allegation or determination of liability made against its insured." However, "[t]he authorized grounds for vacating an award are limited, and do not include re-litigating the facts or legal issues determined by the award." *Britt*, 577 S.W.3d at 144; *see also Sheffield Assembly of God Church, Inc. v. Am. Ins. Co.*, 870 S.W.2d 926, 930 (Mo. App. W.D. 1994) ("The party challenging an arbitration award is not entitled to have a reconsideration of the merits of the dispute."). Thus, GEICO's claimed "obvious" intention to challenge the arbitrator's liability determination does not equate to an "obvious" intention to challenge the award based on one of the limited statutorily-allowed grounds for vacatur set forth in section 435.405. To the extent GEICO argues the trial court had clear notice from the motion to intervene that GEICO intended to make a meritorious argument for vacatur of the award, we disagree.

11

"judgment violated GEICO's constitutional rights of access to the courts" provided by Article I, Section 14 of the Missouri Constitution.

GEICO's claim of constitutional deprivations presumes GEICO was denied the opportunity to defend its interests relating to M.O.'s claims against Insured, including the ability to challenge liability and damages. But GEICO *did* have the opportunity to participate and defend its interests—including the ability to challenge liability and damages—by entering a defense of Insured. *See Aguilar*, 588 S.W.3d at 201 ("To the extent that GEICO claims it should have been able to litigate any of the purported findings of fact and conclusions of law in the Arbitration Award . . . , we would note that it had every opportunity to enter a defense of [its insured] without reservation and thus to litigate such matters, but chose not to do so." (internal marks omitted)). GEICO did not take advantage of this opportunity, and instead denied coverage and refused to defend Insured. Moreover, GEICO initiated a declaratory judgment action in federal court seeking a determination as to its obligations under the insurance policy, and that federal action provides yet another forum in which GEICO may defend its interests. *See Britt*, 577 S.W.3d at 142 ("[T]he insurer has a forum by declaratory judgment action . . . that affords the insurer full scope to protect its interests against the contention of coverage, and hence liability for the judgment.").

Accordingly, we find the timing of the trial court's judgment confirming the arbitration award did not violate GEICO's constitutional rights to due process or access to the courts. *See Barnett v. Columbia Maint. Co.*, 632 S.W.3d 396, 408-09 (Mo. App. E.D. 2021) (Insurers did not suffer constitutional deprivations where they were given the opportunity to defend their insured but refused to do so, and they had the opportunity to litigate coverage in the pending declaratory judgment action.); *Loveland*, 626 S.W.3d at 731 (finding the trial court did not violate the insurer's constitutional rights by overruling its motion to deny confirmation of the arbitration award, as the

12

insurer "had and will have other opportunities to litigate the issues present in this case"); *see also Knight*, 609 S.W.3d at 827 (finding the trial court's confirmation of the arbitration award did not violate the insurer's "rights to due process, a jury trial, or to access the courts," because at the time of intervention liability and damages had been decided, and "it was not open to" the insurer to relitigate those issues).

Point III is denied.

## Conclusion

The Judgment Nunc Pro Tunc is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

Karen King Mitchell, P.J., concurs
Thomas N. Chapman, J., concurs in separate opinion

13



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

M.O.,                                        )
                                             )
        Respondent,                     )
                                             )
v.                                           )          WD84722
                                             )
GEICO GENERAL INSURANCE                      )          Opinion filed:  June 7, 2022
COMPANY AND GOVERNMENT                       )
EMPLOYEES INSURANCE                          )
COMPANY,                                     )
                                             )
        Appellants.                     )

## CONCURRING OPINION

I concur with the majority opinion, as it does correctly apply the law as provided in *Knight ex rel. Knight v. Knight*, 609 S.W.3d 813 (Mo. App. W.D. 2020), to which I dissented. While the facts in the instant matter vary a bit from *Knight*, the material facts remain the same: the insurer was apprised of the claim against its policyholder and was requested to indemnify and to provide a defense; the insurer declined coverage; the claimant and the policy holder entered into a section 537.065 agreement to settle the claim (in this instance to submit the damages for arbitration) and to only seek collection from the insurance policy proceeds; the claimant filed suit against the purported insured and notified the insurer of the section 537.065 agreement; and within 30 days of said notice the insurer was granted leave to intervene pursuant to section 537.065.2, as then provided in the 2017 amendments to section 537.065.  Like the insurer in

*Knight,* even though GEICO was allowed by statute to intervene in the suit (a right independent of any obligation to indemnify or defend its insured), it was allowed no meaningful opportunity to participate in the suit by denying its insured's liability or defending against the claimant's claim, and judgment was entered against its purported insured.

For the same reasons stated in my dissent in *Knight*, I believe the result we reach ignores the independent right the legislature granted the insurer to represent its own interests (regardless of its denial of coverage), and makes that statutory right of intervention a virtual nullity, relegating the insurer to the status of a bystander. In doing so, the majority necessarily finds that, due to GEICO's declination of coverage (and related duty to defend its insured), it may be denied the opportunity to meaningfully participate in the suit setting the award of damages against its purported insured—leaving GEICO in exactly the same position it would have been in before the 2017 amendments to section 537.065 were ever enacted. *Knight* provides as such, even though the insurer's independent right of intervention set forth in the 2017 amendments to section 537.065 was plainly intended to change pre-existing law, and to give an insurer an independent opportunity to defend against a liability claim, even when its insured no longer had an incentive to defend the suit because it faced no personal liability.

Although I continue to believe that *Knight* was wrongly decided, because the majority opinion correctly applied that binding precedent, I concur in its result affirming the Judgment Nunc Pro Tunc.

_____
THOMAS N. CHAPMAN, JUDGE

2